### BRODNICK v. MUNGER et.

Common Pleas Court, Montgomery County.

No. 102530.   Decided October 22, 1951.

Pickrel, Schaeffer & Ebeling, Dayton, for plaintiff.
Mathias H. Heck, Pros. Atty., Dayton, by Pierce Wood, Special Pros. Atty., Dayton, for defendant.

### OPINION

By MILLS, J.

This matter was submitted to the court upon the pleadings, an agreed statement of facts, and briefs of counsel.

The petition recites as follows:

"Plaintiff brings this action under §12102-1 to §12102-16, inclusive, GC, known as the Uniform Declaratory Judgments Act, for the purpose of obtaining by this court a declaration

of the rights, status and duties existing between the parties hereto, and other persons similarly situated and residing in trailers in Montgomery County, Ohio.

"Plaintiff says that the defendants, Harry J. Munger, John E. Brumbaugh and John F. Ahlers, comprise the regularly elected and acting Board of County Commissioners of the County of Montgomery and State of Ohio; that the defendant, Dayton Power and Light Company, is a public utility corporation engaged in the business of supplying electrical power and natural gas to the county of Montgomery and various other localities; that the defendant, Robert Gray, is the duly appointed building inspector of Montgomery County, Ohio, appointed by the said Board of County Commissioners of Montgomery County, Ohio, and acting under the authority delegated to him by the said Board of County Commissioners.

"Plaintiff further alleges that on June 17th, 1947, the Board of County Commissioners, composed of the said Harry J. Munger, John E. Brumbaugh and John F. Ahlers, adopted by resolution a code of building regulations known as the Building Code for Unincorporated Areas of the County of Montgomery, State of Ohio, by virtue of authority contained in §2480 GC.

"Plaintiff further says that at all times hereinafter alleged he was the owner of a 1948 Kozy Coach House Trailer; that on or about July 10th he placed the said trailer upon a tract of land known as 2836 Horlacher, Van Buren Township, Montgomery County, Ohio, which tract was owned by the father of this plaintiff and adjacent to his father's residence; that said trailer was parked on the said premises described, resting upon the two wheels of said trailer, the front end of said trailer being supported by cement blocks; that a foundation of cement blocks was built extending from the ground to the floor level of said trailer; that said house trailer was intended to be used as a home for the plaintiff and his wife; that he brings this action for the benefit of himself and other residents of Montgomery County, Ohio, residing in trailers and located in the unincorporated areas of Montgomery County, Ohio.

"Plaintiff further alleges that on or about June 30th, 1950, he requested the defendant, the Dayton Power and Light Company, to connect electrical power to his trailer, located at 2836 Horlacher in Van Buren Township from existing power lines in the vicinity; that this plaintiff was told by an official of said defendant corporation that such a connection could not be made until he had obtained a permit from the Montgomery County Building Inspector, authorizing said connection; that on the same day the plaintiff called at the office of

the Building Inspector, Montgomery County, Ohio, for the purpose of obtaining a permit which would enable him to obtain electrical service; that at that time this plaintiff was informed by the defendant, Robert Gray, acting in his official capacity as building inspector for Montgomery County, Ohio, that he would not authorize the inspection required as a prerequisite for the issuing of such a permit for the reason that a trailer is a residential building within the meaning of the Building Code for Unincorporated Areas of the County of Montgomery, and that since said trailer did not comply with said Building Code for want of a permanent foundation, in accordance with specifications outlined in said code, no permit could or would be issued for the reason that said trailer could not be used for a residence in any event and irrespective of the result of said inspection of the wiring.

"Plaintiff further alleges that trailers are constructed primarily of metal; that most trailers are not flat on the bottom thereof and afford no means of affixing same to a cement foundation as required by the Building Code in a manner which would assure its remaining on said foundation under adverse weather conditions."

This plaintiff further says that the pertinent sections of the Building Code for Unincorporated Areas of Montgomery County, Ohio, pertaining to electrical installations are found in Chapter 13 of said Code, Section 1302 of which reads as follows:

"(a) New Buildings—No person engaged in the business of transmission or sale of electricity shall make any installation connecting service lines with electric wiring and apparatus in any building, or furnish electricity to any building, until an inspection of such wiring and apparatus is made by the County Building-Inspector or the Bureau approved by him and a certificate of approval issued. A copy of the certificate shall be forwarded to the person making the service connection.

"(b) Existing Buildings—No person engaged in the business of transmission or sale of electricity shall continue furnishing electricity to any building after being notified in writing by the County Building-Inspector or the Bureau approved by him that the wiring system is defective, has been altered or added to and is not in accordance with the provisions of this Code. All such wiring, material, apparatus and/or equipment shall comply with the requirements of this Code and inspection of such additional wiring apparatus and feeders shall be made and approved as provided in Section 1302 (a). A copy of the certificate of approval of such inspection shall be forwarded to the person furnishing the electricity."

The pertinent Section regulating footings and foundation walls is Section 718-1 of the Building Code, which reads as follows:

"Section 718-1—Footings and foundation Walls.

"(a) Footings of all foundation walls shall be of poured concrete. The base areas of all footings and foundations shall be proportioned as specified in Section 605(c).

"(b) Solid masonry foundation walls and those of concrete block shall be not less in thickness than the wall immediately above and in no case less than 8 inches thick.

"(c) When the stresses due to earth pressure, surcharges and superimposed loads exceed the maximum working stress permitted by this Code for the materials used, and the additional stresses are not otherwise provided for, the wall thickness shall be increased to bring the stresses within the required limits.

"(d) All foundation walls shall extend below the level of frost action and in no case less than 30 inches below finished grade excepting non-residential buildings of 600 square feet or less in area may have a minimum depth of 12 inches.

"(e) Ventilators shall be provided in foundation walls for the space between wood constructed floors and the ground surface where such space is not utilized as a basement and otherwise ventilated. Not less than two (2) ventilator openings aggregating one (1) square foot of area for each 25 lineal feet of exterior wall shall be provided. Such openings shall be covered with gratings or wire mesh in which the mesh openings are not larger than one-half inch in any direction."

Section 636, Sub-section (o), of said Code, further provides that all said foundations shall be concrete, 18 inches between the ground level and any wood portion of said building. It reads as follows:

"(o) In basementless spaces ground level shall be at least 18 inches below the bottom of all joists, beams and griders. Where it is necessary to provide access for maintenance and repair of piping, etc., in the under floor space, a minimum clearance of 24 inches below bottom of lowest wooden member shall be provided. Where the interior ground level in basementless spaces is below outside finish grade or if the grade is lowered under beam or girder, adequate precautionary measures shall be taken to assure positive drainage at all times."

Section 201-8 of the Building Code defines a building as follows:

"Section 201-8—Building.

"Any construction built or used in whole or in part for the shelter or enclosure of persons or chattels, and any part of such construction divided by required fire separations. The term 'building' shall be construed as if preceded by the word 'residential'."

Plaintiff further alleges that house trailers are not excepted from any of the provisions of said Code; that if the defendant County Commissioners and the County Building Inspector can force owners of trailers to erect permanent foundations under trailers when they are used as a residence, they can likewise enforce all other Sections of said Code against trailers which they cannot meet, with the result that no trailer could be used as a residence in Montgomery County, under the existing Building Code..

That the following are a number of the Sections of said Code which no trailer can meet:

"Section 402—Lighting and Ventilating of Rooms.

"(3) Room sizes.

"(a) In every building hereafter erected or substantially altered, all rooms, except water closet compartments and bathrooms, shall contain at least 80 square feet of floor area and no such room shall be in any part less than 8 feet wide. The foregoing provisions shall not apply to one kitchenette in any apartment of a multiple-dwelling, nor to one dining alcove in each apartment suite or group of rooms in any building."

The above quoted Section requires the width of each room to be eight feet wide. However, §7248-2 GC provides that no vehicle shall be operated upon the public highways whose over-all width is in excess of 96 inches. For this reason it is impossible, under Ohio law, to have a trailer room eight feet in width on the inside thereof.

Section 402(3) provides as follows:

"Section 402—Lighting and Ventilating of Rooms.

"(3) Room Sizes.

"(b) In every building hereafter erected or substantially altered there shall be in each apartment, suite or group of rooms at least one room containing not less than 132 square feet of floor area."

Very few trailers, if any at all, contain a room with 132 square feet floor area, as most trailers consist of a living room, kitchen and bedroom, and the square foot area of each is substantially less than 132 square feet.

Section 402(4) provides as follows:

"(4) Room Heights.

"No room in any building hereafter erected or substantially altered, shall be in any part less than 7' 6" high from the

finished floor to the finished ceiling. Attic rooms, used for living purposes in dwellings shall be not less than 4 feet high at any point and shall be not less than 7 feet six inches in height for at least one-half of the floor area. In no case shall any room in residential occupancy contain less than 600 cubic feet of air space."

This requirement that no room shall be in any part less than seven feet, six inches high from the finished floor to the finished ceiling, rules out all trailers manufactured in the past and now being manufactured, for the reasons that all trailers' room heights range from 6' 6" to 6' 8" in height.

Section .722(b) of the Building Code, in reference to flue lining, contains the following requirement: "Flue linings—Flue linings shall be manufactured from fire clay or other suitable refractory clays, either natural or compounded, adapted to withstand reasonable high temperatures and flue gases, and shall have a softening point not lower than 1994° fahrenheit (Seger Cone 03). Flue linings shall be a standard commercial thickness, but not less than ⅝ inch. They shall be carefully bedded one upon another in fire clay mortar with all joints left smooth on the inside. * * *"

There are no fire clay flue linings in trailers manufactured at this time as all said trailers contain metal flues.

Section 1405 of the Building Code, pertaining to downspouts, has the following requirement: "All buildings shall be provided with downspouts which will conduct roof water so as to prevent damage to buildings, walls, foundations and ajoining property."

No trailer is equipped with downspouts and it is obvious from an examination of the same that the same are not needed or required.

Section 1409 of the Building Code, in regard to toilet compartments, has the following requirement:

"Toilet Compartments and Partitions:

"Compartments enclosing individual water closets shall be not less than 7 feet high in the clear and not less than 2 feet 6 inches wide. The minimum length shall be 4 feet for compartments enclosing wall tank type closets and 3 feet for compartments enclosing flush valve type. * * *"

Here, again, the 7' height limit precludes a trailer from complying with this section.

Plaintiff further says that there are other sections of the said Building Code which no house trailer now manufactured can meet, and the above sections are quoted as examples of the unreasonableness of the application of said Building Code when applied to house trailers, and the impossibility of a house trailer meeting said requirements.

Plaintiff further says that if said Building Inspector attempts to enforce the provisions of the Building Code against his trailer and against other trailers in Montgomery County, Ohio, great numbers of people will be forced to abandon said trailer homes or leave Montgomery County, and irreparable injury will result.

If the said Building Inspector can force the erection of foundations for trailers, he can enforce Section 106 of said Building Code which provides as follows: "It shall be unlawful to maintain, occupy, or use a building, which has been erected or altered in violation of the provisions of this Code."

Plaintiff states that if a trailer is a residential building under the terms of §2480 GC, and subject to the Building Code for Unincorporated Areas of Montgomery County, Ohio, then the Building Inspector would be authorized to prevent occupancy of a trailer in Montgomery County for any period of time whatsoever.

Plaintiff further states that said Building Code purports to be enacted under authority of §2480 GC, and that the pretended actions of the Building Inspector of Montgomery County, Ohio, to require foundations under trailers as a condition precedent to obtaining an electrical permit, is unlawful, null and void.

Plaintiff further alleges that the authority given to the County Commissioners under §2480 GC, to "enforce regulations * * * pertaining to the erection, construction, repair, alteration and maintenance of residential buildings" does not include house trailers, for the reason that a trailer is not a residential building within the meaning of the said §2480 GC.

Plaintiff further states that if the court finds that a house trailer is a residential building under §2480 GC, then the subject Building Code adopted by the Board of County Commissioners of Montgomery County, Ohio, is unlawful as being unconstitutional, is unreasonable, confiscatory, and discriminatory for the reason that said Code, as drawn, does not set up standards for trailers but, in effect, prohibits trailers from being used as a residence in any portion of Montgomery County, Ohio.

Wherefore, plaintiff prays the judgment and direction of the Court in the following respects:

"1. Is a house trailer a 'residential building' within the meaning of said §2480 GC, so as to authorize the Montgomery County Building Inspector to refuse to make the inspection required to obtain a permit for electrical connection for the reason that said trailer has no permanent foundation, as re-

quired in said Building Code, and could not be used as a residence?

"2. If a house trailer is a residential building under §2480 GC, is the existing Building Code for Unincorporated Areas of Montgomery County, Ohio, containing the provisions enumerated herein, among others, a valid exercise of the power given by §2480 GC, or is same unlawful or unconstitutional, as unreasonable, confiscatory or discriminatory?"

The answer of the defendants, the County Commissioners of Montgomery County, Ohio, reads as follows: "For their answer to plaintiff's petition, Harry J. Munger, John E. Brumbaugh and John F. Ahlers, as the Board of County Commissioners of Montgomery County, Ohio, and Robert Gray, as Montgomery County Building Inspector, admit that they hold these offices, as alleged in the petition; admit the adoption of the Code of Building Regulations known as the Building Code for Unincorporated Areas of the County of Montgomery; admit that defendant, Gray, refused to authorize the inspection of plaintiff's house trailer as a prerequisite for the issuance of a permit to the Dayton Power and Light Company to connect electrical power to said trailer; admit that this refusal was on the ground alleged in the petition, and admit that the various sections of said Building Code set forth in the petition were enacted as so set forth.

"Further answering, these defendants deny each and every allegation in said petition set forth.

"Wherefore, these answering defendants pray that the plaintiff's petition be dismissed at its costs."

The matter being at issue, counsel has filed the following agreed statements of facts.

"It is stipulated by and between the parties hereto, as follows:

"1. Plaintiff is the owner of a 1948 Kozy Coach House Trailer, which, on or about July 10, 1950, he placed upon a tract of land known as 2836 Horlacher, Van Buren Township, Montgomery County, Ohio, which tract is owned by plaintiff's father and is adjacent to the latter's residence.

"2. Said trailer is parked upon said premises resting upon the two wheels of said trailer, the front end being supported by cement blocks. A foundation of cement blocks has been built, extending from the ground to the floor level of the trailer. Said foundation serves only as a wind break. It does not bear any of the weight of the trailer and is not physically connected with it.

"3. The plaintiff and his wife, intend to use the trailer as a home.

"4. Trailers are constructed primarily of metal. Most trailers are not flat on the bottom and afford no means of affixing same to a cement foundation, as required by the County Building Code, in a manner which would assure the trailer remaining on the foundation under adverse weather conditions.

"5. Very few trailers, if any, contain rooms with 132 square feet of floor area, most trailers consisting of a living room. kitchen and bedroom, each of which has substantially less than 132 square feet of floor area.

"6. No trailer can comply with Section 402 of the Montgomery County Building Code, (3) (a) requiring rooms eight feet in width in residential buildings, and still remain in compliance with §7248-2 GC, limiting vehicles traversing highways to 96 inches in over-all width.

"7. The distance from the finished floor to the finished ceiling in all standard trailers ranges between six feet, six inches, and six feet, eight inches.

"8. Standard trailers do not have fire clay flue linings, but rather have metal flues.

"9. No trailer is equipped with downspouts.

"10. No standard trailer has a clearance of seven feet from ceiling to floor in its toilet compartments.

"11. If all applicable sections of the Montgomery County Building Code were rigidly enforced, it would be illegal to maintain any standard form of house trailer within the unincorporated areas of Montgomery County. The Montgomery County Building Inspector has not attempted to enforce those sections of the Code relating to floor areas and ceiling height, room width and other dimensional requirements, in the case of house trailers, limiting rather his enforcement to that section of the Code requiring residential buildings to be affixed to permanent foundations and only in those cases where trailers are being used as permanent homes outside regularly established trailer courts but by virtue of said Building Code, authority is given to said Building Inspector to enforce all sections thereof.

"12. A copy of the Montgomery County Building Code is attached hereto and made a part of the record of this case in its entirety.

"It is further agreed by and between the parties that this cause be submitted to the court for its decision and judgment upon the two issues set forth in plaintiff's petition, as follows:

"1. Is a house trailer a 'residential building' within the meaning of §2480 GC, so as to authorize the Montgomery County

Building Inspector to refuse to make the inspection required to obtain a permit for electrical connection for the reason that said trailer has no permanent foundation, as required in said Building Code, and could not be used as a residence?

"2. If a house trailer is a residential building under §2480 GC, is the existing Building Code for Unincorporated Areas of Montgomery County, Ohio, containing the provisions enumerated herein, among others, a valid exercise of the power given by §2480 GC, or is same unlawful or unconstitutional, as unreasonable, confiscatory or discriminatory, insofar as it applies to house trailers?

"It further is agreed by and between the parties that the plaintiff will submit his brief within thirty days from date hereof, and the defendants within twenty days thereafter."

The first question for the court to consider is: "Is a house trailer a 'residential building' within the meaning of §2480 GC, so as to authorize the Montgomery County Building Inspector to refuse to make the inspection required to obtain a permit for electrical connection for the reason that said trailer has no permanent foundation, as required in said Building Code, and could not be used as a residence?"

The County Commissioners were authorized under §2480 GC entitled "Regulation of construction, etc, of buildings in unincorporated portion of county; appeal; penalty for violation," which reads: "The board of county commissioners of any county, in addition to the powers already granted by law, may adopt, administer and enforce regulations pertaining to the erection, construction, repair, alteration and maintenance of residential buildings within the unincorporated portion of any county. In no case shall said regulations go beyond the scope of regulating the safety, health and sanitary conditions of such residential buildings. * * *"

Pursuant to the enactment of §2480 GC and on June 17, 1947, the County Commissioners of Montgomery County, Ohio, adopted a Building Code, Section 102 of which, entitled "Scope," reads as follows: "(a) All matters concerning, affecting or relating to the erection, construction, alteration, repair, removal, demolition, equipment, use and occupancy, location and maintenance of residential buildings in the unincorporated areas of Montgomery County shall be included in this Code and all reasonable rules and regulations adopted in furtherance thereof, and in conformity therewith, except residential buildings owned, used or occupied by farmers;" and then the County Commissioners proceeded to enact by resolution, and adopted a building code in conformity with §2480 GC.

The court has been referred to numerous cases in regard to

trailers in the briefs of counsel, but the court has no precedent to follow in any of the cases cited nor in any case the court has found by research in any of the various state reports. The Supreme Court of the State of Ohio, in **Renker v. Village of Brooklyn, 139 Oh St 484,** 40 N. E. 2d 925, 929, passed upon the constitutionality of an ordinance passed by the Village of Brooklyn, Cuyahoga County, Ohio, regulating so called trailers and licensing and regulating trailer camps within the municipality. However, the issues in that case are somewhat different from the issues in this case, but the court upheld the constitutionality of the ordinance passed by the Village of Brooklyn, holding: "While under the police power, legislative bodies may regulate persons and property in the interests of public health, public morals and public safety, this power is limited by constitutional protection so that a citizen may not unreasonably, arbitrarily, or without due process of law, be deprived of his life, liberty and property. This constitutional right of a citizen cannot be abridged or destroyed under the guise of police regulation. Legislative bodies cannot by mere declaration make that a nuisance as a matter of law which is not a nuisance as a matter of fact but may become so only by reason of circumstances." This is, however, from the dissenting opinion of Judges Hart and Williams. The court, in the dissenting opinion, goes on further to say:

"Personal liberty which includes the right of a citizen to choose his place of abode is one of the natural rights which has been protected by its inclusion as a guarantee in all the constitutions of this country. (Citing cases.)

"The right of personal liberty includes the power of locomotion, of changing situation, or removing one's person to whatever place one's inclination may direct without any restraint except by due process of law. * * *

"By reason of being a citizen of the United States, one automatically becomes a citizen of the state and the municipality in which he chooses to reside. A person's right to live in the place of his choice does not depend upon the style or architecture of his abode. So long as he commits no crime and is obedient to reasonable regulations relating to the general welfare, the public health and safety of the community in which he lives, there he may remain."

And quoting from Edwards v. People of State of California, 314 U. S. 160, 62 S. Ct. 164, 86 L. Ed. 119: "There appears to be nothing unusual about living in a trailer. The petition alleges that 600,000 trailers were manufactured in this country in 1937."

If that were true in 1937, it is a question of how many more trailers have been manufactured and are in·use in all the states of the union, there being close to five thousand now being used in Montgomery County, Ohio. (Continuing) "If this is a fact, it is obvious that there must be a great demand for this kind of housing, and whether the demand arises from the standpoint of economy, the quest of pleasure from travel, the demands of health, or the shifting needs of employment, no reason can be assigned as to why the occupants of a trailer should be forced out of any municipality for a particular period of time for the sole reason that they occupy a trailer."

Therein the above named judges dissented from the opinion of the majority. This court quotes from the language of that opinion merely for the purpose of reasoning. Times have changed considerably since 1937; there has been World War Two, and now another war in which the United States of America is involved, under the police powers of the United Nations. This community, and other like communities of the state of Ohio, and all other states of this union, are in the process of manufacturing war materials and munitions, which involves the expenditure of millions of dollars, and employment of millions of men and women in this industry. People migrate from far off communities, artisans, mechanics of different trades; all necessary to the execution of this magnanimous project to be accomplished in a short space of time. It is apparent to everyone that there is a limitation of housing facilities in this and every other like community. Without permanent or temporary housing facilities this great work for the preservation of this nation and for world peace cannot be accomplished.

The legislature, in enacting §2480 GC states specifically the word "building." They must have had in contemplation and before them at the time the knowledge of the existence of these thousands of trailers in the State of Ohio, and their locations, and their necessity in using the term or they would have included the word "trailers." If they intended in the regulation of buildings to include trailers, they would include the word "trailers" in §2480 GC. The legislature must also have had in mind the fact that the height, breadth and length of trailers are limited, in order for them to be transported from one place to the other upon the roads of the State of Ohio. They must have taken into consideration the fact that no trailer, because of its dimensions, would be required to have permanent foundations as required by the ordinary building code for permanent buildings; that they did not have chim- ·neys and room dimensions and other regulations more speci-

fically set forth in the building codes adopted by various county commissioners in the State of Ohio, or to be adopted by them, and the county commissioners of Montgomery County, when they adopted their building code, were confronted with the same knowledge of the existence of, close to five thousand trailers in Montgomery County, and could not have been oblivious to the fact that trailers could not come up to many of the specifications as required in the code as adopted.

The commissioners of the various counties of the State of Ohio, acquire their authority in adopting their own code in their particular communities from §2480 GC, and it is so stated in the code adopted by the commissioners of Montgomery County, because the wording in their code is not dissimilar to the wording in §2480 GC. The owning, maintaining and the use of a trailer is a semi-nomadic way of life, especially in these times and in this community. The court, however, cannot disregard the reasoning of some of the learned judges in determining whether a trailer is a building in cases that have come before them.

The court held in Aetna Life Ins. Co. v. Aird, 5 Cir., 1939, 108 F. 2d at page 136, 125 A. L. R. 1436, that a house trailer was a building, under the conditions of that case and for the purpose of determining double indemnity for one who lost his life in a house trailer.

Judge Crawford, of this court, passed upon the case of State of Ohio v. Arthur Reay, No. 100485, on February 23, 1950, where Arthur Reay was convicted in the Court of the Justice of the Peace of Mad River Township on February 15, 1949, on a charge of having used for living quarters a trailer located in other than an approved trailer camp in violation of Section 401 (3) (f) of the Building Code for unincorporated areas in the County of Montgomery Ohio, under authority granted the County Commissioners by §2480 GC. Judge Crawford held:

"In no case shall said regulations go beyond the scope of regulating the safety, health and sanitary conditions of such buildings."

"To go further and attempt to determine the place or places where the trailers may be used for residential purposes is to exceed the scope of a building code and enter the field of zoning."

Judge Crawford discharged the appellant, stating that the section of the Montgomery County Code was unlawful, unreasonable and therefore, unconstitutional.

Secs. 6290, 6292-2 GC, on imposing a use tax on house trailers for human habitation, hold: "7a. 'House trailer' means any self-propelled and nonself-propelled vehicle so designed,

constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation whether resting on wheels, jacks or other foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways." § 6290.

Sec. 7248-2 GC limits vehicles traversing the highways to ninety six inches.

It is apparent that a house trailer ninety six inches in width could not comply with all the regulations as provided in the building code adopted by the commissioners of Montgomery County, and the regulation of house trailers under this code must not have been in contemplation of the commissioners of Montgomery County in enacting their code because no house trailer could come up to the specifications required there. It is evident they are regarded by the state legislature as personal property and not places for permanent habitation.

The agreed stipulation of facts in this case says the trailer in question is resting upon two wheels, the front end being supported by cement blocks which serve only as a windbreak and do not bear any of the weight of the trailer and are not physically connected with the trailer.

The defendant, Robert Gray, acting in his official capacity as Building Inspector of Montgomery County, Ohio, refused to authorize the inspection required as a prerequisite to the issuing of a permit to the Dayton Power and Light Company for the reason that a trailer is a residential building within the meaning of the Building Code for Unincorporated Areas of the County of Montgomery and that since said trailer did not comply with said Building Code for want of a permanent foundation, in accordance with specifications outlined in said code, no permit could or would be issued for the reason that said trailer could not be used for a residence in any event and irrespective of the result of said inspection of the wiring.

The court is taking judicial notice that the location of said trailer is not in a trailer camp, and that to affix said trailer to a foundation as required by the code would be unauthorized.

The court, therefore, comes to the conclusion that under §2480 GC and the Building Code of Montgomery County, Ohio, a house trailer is not a residential building within the meaning of said sections, and therefore, no authority is given to the Montgomery County Building Inspector to regulate house trailers in any manner, either by provisions of §2480 GC, or the Building Code for Unincorporated Areas of Montgomery County, Ohio, as adopted by the County Commissioners of Montgomery County, Ohio, June 17th, 1947.

The court is not of the opinion, however, that the legislature of the State of Ohio cannot pass laws regulating house trailers used for human habitation.