**STARY** et, Plaintiffs, v. **BROOKLYN** (City) et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 631590.  Decided September 30, 1953.

Frank G. Mercer, Cleveland, Earl L. Stary, Todd & Todd, Pickrel, Schaeffer & Eberling, Dayton, for plaintiffs.

Michael L. Hearns, for defendants.

### OPINION

By MERRICK, J.

This is an action for declaratory judgment and injunction, brought to invalidate the trailer camp ordinance of the City of Brooklyn on the basis that such ordinance is unconstitutional, on the theory that it is in conflict with state law.

Plaintiffs and their predecessors in title have owned and operated a trailer camp in the City of Brooklyn since the year 1940. In that year an ordinance was passed regulating trailer camps in that municipality. Several amendments have been passed in the ensuing years and are now in full force and effect.

As soon as the original ordinance became effective, it was attacked in the courts. One of the principal complaints lodged against it was based on a provision in the ordinance which limited the period of time a person could park in a trailer camp. It should be noted that, at the time of the passage of the original ordinance, there was no state enactment on the subject. This litigation soon reached the Supreme Court of Ohio and for the first time we had a decision on the questions raised. The entire ordinance was under attack, with special criticism of Sections 6, 7 and 8, which are in the present ordinance.

Section 6 requires the operator of a trailer camp to keep a duplicate daily registration book containing the name and address of each occupant of the camp. One copy must be given to the village marshal.

Section 7 limits the parking of occupied trailers to a period of 60 days. It further provides that no trailer or its occupants may again occupy any camp within the municipality for a period of 90 days thereafter.

Section 8 makes it the duty of the village marshal to inspect the trailer camp daily.

The decision of the Supreme Court in this case is found in **Renker v. Brooklyn, 139 Oh St 484.** The syllabus of the case disposes of the question as follows:

"A municipal ordinance which provides for (1) daily in-

spection of trailer camps, (2) the keeping of a duplicate daily registration book (one copy to be given to the marshal) containing the name and address of each occupant of such a camp, and (3) a 60-day maximum period of occupancy with a 90-day minimum period of withdrawal before again occupying any camp within the village is not an unconstitutional exercise of legislative power."

It is interesting to note some of the reasoning contained in the opinion of Chief Justice Weygandt and found at page 487. I am taking the liberty of quoting an excerpt:

". . . . It is true that the ordinance imposes upon trailer camp owners and guests certain regulations not applicable to other residents of the municipality. However, in return for this disadvantage they receive from the municipality certain concessions not available to other residents. As illustrative of this, the evidence discloses that the average trailer is approximately 7 feet in width and 17 feet in length, thus having a floor area of but 119 square feet, with as many as five people living therein . . . . In contrast with this, the building code of the village requires a minimum area of 700 square feet in houses with one floor, occupied by other residents . . . . A study of the record demonstrates that trailers and trailer camps have their proper place in present-day life when they are used as temporary accommodations for transients as originally intended, but they cannot be expected to meet the more exacting requirements of a permanent home."

This decision was far-reaching in its import and seemed to settle all legal controversy revolving around the question of the right of a municipality to pass legislation regulating trailer camps, their mode of operation and the time limitation upon the period and length of stay of the occupants.

This decision certainly disposed of the claim that an automobile trailer was not a residence in the legal use of that word.

An exhaustive discussion of this latter theory is found in the opinion of Judge Charles L. Mills of the Common Pleas Court of Montgomery County in the case of **Brodnick v. Munger, 64 Abs 292** and affirmed by the Court of Appeals of the Second District in **64 Abs 306.**

In the year 1951, the State of Ohio entered the field of trailer camp legislation. This is contained in Revised Code Section 3733.

Where the General Assembly has spoken through legislation, on a matter of state-wide concern, a municipal ordinance in conflict with such legislation must give way to the superior authority. **Cincinnati v. Gamble, 138 Oh St 220, State, ex rel. Arey v. Sherrill, 142 Oh St 574, Neil House Hotel Co. v. Columbus, 144 Oh St 248.**

It has been urged that because the State of Ohio has by legislation undertaken to police the construction and operation of trailer camps within the state, that, therefore, it has preempted the field and that all municipal ordinances touching upon this activity are void for that reason.

Municipalities in Ohio receive their law making powers directly from the state Constitution in the following language of **Section 3, Article XVIII:**

"to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

As may be readily observed, the General Assembly cannot withdraw from municipalities powers expressly conferred upon them by the Constitution. The power granted to municipalities to adopt and enforce police regulations is limited only by general laws in conflict therewith upon the same subject-matter. **City of Fremont v. Keating, 96 Oh St 468; Heppel v. City of Columbus, 106 Oh St 107; Village of Struthers v. Sokol, 108 Oh St 263; City of Youngstown v. Evans, 121 Oh St 342.**

In 1939, the Supreme Court of Ohio decided the case of **City of Akron v. Scalera, 135 Oh St 65.** It sustained the validity of an ordinance which prohibited the sale of beer on Sunday. The state law regulates the sale of beer and intoxicating liquor and issues permits therefor. The state law authorizes The Board of Liquor Control to adopt "rules, regulations, and orders consistent with the provisions of this act, with reference to sales of beer and intoxicating liquor on Sundays and holidays and with reference to the hours of the day during which and the persons to whom intoxicating liquor of any class may be sold, and regulations with reference to the manner of sale." At that time, while it had the authority to do so, the Liquor Board had no rule or regulation with reference to the sale of beer on Sunday. In fact, the opinion of Judge Matthias at page 67 uses this language:

"It is to be observed that this statute contains no regulation or restriction of, in fact no reference to, the sale of beer other than to prohibit its sale at any time to any person under 18 years of age.

"Among the powers of the Board of Liquor Control enumerated by §6064-3 GC, is the power to adopt 'rules, regulations, and orders consistent with the provisions of this act, with reference to sales of beer and intoxicating liquor on Sundays and holidays and with referencce to the hours of the day during which and the persons to whom intoxicating liquor of any class may be sold, and regulations with reference to the manner of sale.'

"Our attention is not directed to any rule or regulation adopted by the Board of Liquor control with reference to the sale of beer on Sunday. We are therefore not called upon to determine whether an ordinance in conflict with any such rule or regulation would be violative of the constitutional requirement that local police regulations shall not be in conflict with general laws."

And further on page 68 of the opinion:

"Applying the principle announced in the cases above cited, it is to be seen that there is no conflict with the general law merely because certain specific acts made unlawful by ordinance are not referred to in any general law."

An ordinance is not necessarily to be regarded as in conflict with a general law relating to the same subject, however, merely by reason of the fact that it contains requirements or prohibitions in addition to those contained in the general law, or because specific acts which are offenses under the general law are not prohibited by the ordinance. **28 O. Jur., Page 443.**

A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law, or because certain specific acts are omitted in the ordinance but referred to in the general law, or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance. Village of Struthers v. Sokol, supra.

**Section 3, Article XVIII of the Constitution,** clearly contemplates that both the state and the municipalities of the state may exercise the same police power; the only limitation being that the exercise of that power by a municipality shall not conflict with the general laws of the state. **Greenburg v. Cleveland, 98 Oh St 286.**

Former §6307 GC specifically provides that local authorities shall not regulate the speed of motor vehicles by ordinance, by-law or resolution. In the case of City of Fremont v. Keating, supra, the Supreme Court of Ohio declared this statute unconstitutional for the reason that: ". . . the General Assembly of Ohio cannot deprive a municipality of its constitutional rights. This section is clearly in violation of **Section 3 of Article XVIII of the Constitution of Ohio** and void."

**Sec. 715.29 GC** provides as follows:

"Any municipal corporation may:—(A) Regulate by ordinance the use, control, repair, and maintenance of buildings used for human occupancy or habitation, the number of occupants, and the mode and manner of occupancy, for the pur-

pose of insuring the healthful, safe, and sanitary environment of the occupants thereof:—(B) Compel the owners of such building to alter, reconstruct, or modify them, or any room, store, compartment, or part thereof, for the purpose of insuring the healthful, safe, and sanitary environment of the occupants thereof:—(C) Prohibit the use and occupancy of such buildings until such rules, regulations, and provisions have been complied with."

The so-called State Building Code has a provision which allows municipal legislation on the same subjects covered in the state code. This may be found in §3781.01 GC which reads as follows:—

"Municipal corporation may make regulations. Chapters 3781, 3783, 3785, 3787, 3789 and 3791 of the Revised Code do not prevent the legislative authority of a municipal corporation from making further and additional regulations, not in conflict with such chapters or with the rules and regulations of the Board of Building Standards determining equivalents . . . ."

Municipalities may adopt and enforce local regulations covering the same subject so long and so far as the same are not in conflict with general laws. City of Fremont v. Keating, supra.

Reconciling these theories of the law with the facts in the instant case leaves but one conclusion:—After a very careful reading and comparison of the trailer laws of the City of Brooklyn and the State of Ohio and the regulations of the Ohio Department of Health, it cannot be said that the ordinance permits or licenses that which the statute forbids and prohibits and vice versa. This is the real query to be applied in this case. This has been the test followed by all Ohio Courts since the decision of the Supreme Court, in the case of Struthers v. Sokol, supra. (1923.)

Following these conclusions, it is the opinion of the writer that the ordinance in question is a valid exercise of police power and is not in conflict with any state law.

Counsel may prepare an entry accordingly. Costs are assessed against the plaintiffs.