SADIE A. FOSTER & others *vs.* MAYOR OF BEVERLY &
others.

Essex.   January 26, 1944. — February 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Zoning.   Cemetery.   Corporation,* Religious corporation, Cemetery corpo-
ration.   *Constitutional Law,* Zoning, Police power.   *Beverly.*

The zoning ordinance of Beverly, purporting among other things to regu-
late and restrict the "use of . . . premises" in the city and showing
by other language that its framers were not unmindful of cemeteries,
was not to be construed as exempting cemeteries from its application
although there was no provision allowing use of land for cemeteries in
any of the zoning districts established by the ordinance.
Action by the mayor and aldermen of a city under G. L. (Ter. Ed.) c. 114,
§ 34, granting a permit for the use of certain premises for cemetery
purposes after such use had been approved by the board of health,
should be quashed if such use would be in violation of the city's zon-
ing ordinance.
A corporation organized under G. L. (Ter. Ed.) c. 180 exclusively for
religious purposes is not entitled by § 9A to use land for cemetery
purposes in violation of the local zoning ordinance.
The zoning ordinance of Beverly, adopted at a time when there were in
use at least four cemeteries of substantial size within the city limits,
was not invalid as unreasonable in that it contained no provision allow-
ing land to be used for cemetery purposes in any of the zoning districts.

PETITION for a writ of certiorari, filed in the Superior
Court on February 11, 1943.

The case was heard by *Donnelly,* J.   In this court it was
submitted on briefs.

*M. S. Heaphy & A. Glovsky*, for the respondents.

*J. J. Foley & F. J. Cloutman*, for the petitioners.

WILKINS, J. This petition for a writ of certiorari, brought by abutting landowners, seeks to quash proceedings had by the respondents, the mayor and the members of the board of aldermen of the city of Beverly, whereby Congregation Sons of Abraham, a religious corporation organized under G. L. (Ter. Ed.) c. 180, and located in Beverly, was granted the right to maintain a cemetery in certain land located in an area previously zoned as a single residence district. The ground for relief stated is that this is a new use of the land violative of the zoning ordinance. See G. L. (Ter. Ed.) c. 40, § 26, as appearing in St. 1933, c. 269, § 1. A demurrer to the petition was overruled by a judge of the Superior Court, who entered an order for judgment quashing the proceedings. The respondents appealed.

It appears from the petition that on February 20, 1939, the board of aldermen, acting under G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, passed "An ordinance to promote the health, safety, convenience and welfare of the inhabitants, to lessen the danger from fire, to protect property and to improve the city by regulating and restricting the location, construction and use of buildings and premises in the city of Beverly, and for the said purposes dividing the city into districts." Section 1 (a) provides: "In order to regulate and restrict the location of trades, industries and other uses, the use, location, height and bulk of buildings, the size of yards and other open spaces, and the area of lots per family housed, the city of Beverly is hereby divided into the following classes of districts: Single Residence . . . Two Family Residence . . . General Residence . . . Apartment House . . . Local Business . . . Commercial . . . [and] Industrial Districts . . .." Section 2, relating to single residence districts, provides in subsection (a): "Use: No building or premises shall be erected, altered or used except for one or more of the following uses: (1) Single-family detached dwelling; (2) Church; (3) Club . . .; (4) Educational use; (5) Agriculture . . .; (6) Municipal recreational use; (7) Accessory use custom-

arily incident to any of the above uses; (8) The renting of rooms . . .;   (9) Customary home occupation carried on for gain . . .."

On November 7, 1942, Congregation Sons of Abraham petitioned the local board of health for the right to maintain a cemetery and to use for burial purposes certain land on Cole Street, known as the Lovett Field.  The board of health approved the petition, and the matter was then referred to the board of aldermen.  On December 28 the board of aldermen voted that the petition be granted, and their action was approved by the mayor on December 29.

The respondents challenge the correctness of the judge's rulings on a number of grounds, none of which we think is valid.

In the first place, it is contended that as a matter of construction the zoning ordinance does not apply to cemeteries, and it is pointed out that in none of the established districts is any provision made for the use of land for cemetery purposes.  The language, however, "regulating and restricting," as it does, the "use of . . . premises" is broad enough to cover cemeteries.  This plainly falls within the powers conferred by G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, which, in so far as material, reads: "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants, any city, except Boston, . . . may by ordinance . . . regulate and restrict the . . . use of . . . land for trade, industry, residence or other purposes.  For any or all of such purposes such an ordinance . . . may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of . . . [this section] and within such districts it may regulate and restrict the . . . use of land . . .."  The words of the ordinance must be "construed according to their natural import in common and approved usage."  *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 360.  "It is a 'familiar principle of interpretation that express mention of one matter excludes by implication other similar matters not mentioned.'"  *Boston & Albany Railroad* v. *Common-*

*wealth,* 296 Mass. 426, 434. *Spence, Bryson, Inc.* v. *China Products Co.* 308 Mass. 81, 88. We cannot read into the ordinance an unexpressed exception exempting cemeteries from its scope. *Gagnon* v. *Ainsworth,* 283 Mass. 488, 490. This conclusion is supported by the fact that the ordinance contains the following: "Section 10. The foregoing requirements shall be subject to the following exceptions and regulations: (a) Where there is a street, alley, railroad, public park or cemetery along the rear of a lot, the depth of the rear yard may be reduced . . .." This shows that the framers of the ordinance were not unmindful of cemeteries, nor did they inadvertently overlook the necessity of providing for them.

The respondents contend also that the zoning statute cannot control the subject matter of cemeteries which they in effect argue are exclusively regulated by G. L. (Ter. Ed.) c. 114, §§ 34, 36, and further that, in any event, a zoning ordinance passed pursuant to a zoning statute cannot apply to corporations organized exclusively for religious purposes under G. L. (Ter. Ed.) c. 180. By G. L. (Ter. Ed.) c. 180, § 9A, added by St. 1926, c. 204, such corporations "have the right to purchase, hold, preserve and maintain burial grounds; provided, that no land shall be so used for burial purposes unless such use shall have been permitted and approved in accordance with the provisions of chapter one hundred and fourteen." Under G. L. (Ter. Ed.) c. 114, § 34, originally found in St. 1855, c. 257, "no land, other than that already so used or appropriated, shall be used for burial, unless by permission . . . of the mayor and aldermen of the city in which the same lies; but no such permission shall be given until the location of the lands intended for such use has been approved in writing by the board of health . . .." By § 36 an appeal to the State department of health is provided for persons aggrieved by the action of the board of health in approving a purchase, taking, or use of lands for cemetery purposes. These provisions constitute a guaranty of a safeguard by action of health officials, which is in no way superior to or inconsistent with a zoning ordinance such as a city is authorized to make on the grounds

not merely of health, but also of the "safety, convenience, morals or welfare of its inhabitants." G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. This is not a case where a subject matter of the zoning ordinance is omitted in the zoning statute. Compare *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85. Nor do we think that the Legislature has evidenced an intent to create a privileged class of corporations immune in at least one respect from zoning regulation. It well might defeat the purpose of the zoning ordinance if religious corporations created under G. L. (Ter. Ed.) c. 180 could locate new cemeteries and enlarge old ones without regard to the zoning ordinance to which all others must conform. See *Moritz* v. *United Brethrens Church on Staten Island,* 269 N. Y. 125. Compare *Lexington* v. *Govenar,* 295 Mass. 31, 36.

The respondents' suggestion that if the zoning ordinance applies, the proposed cemetery would be a use accessory to a church, is not supported by the record.

Failing all else, the respondents submit that if the zoning ordinance is construed as applicable and as prohibiting cemeteries, it is invalid as an arbitrary exercise of the police power and in excess of any authority conferred by G. L. (Ter. Ed.) c. 40. An examination of the map accompanying the copy of the zoning ordinance inserted in the petition shows that there are at least four cemeteries of substantial size located within the limits of the city. These existing uses are unaffected by the ordinance. G. L. (Ter. Ed.) c. 40, § 26, as appearing in St. 1933, c. 269, § 1. There is in truth no prohibition of cemeteries, but merely a limitation to the number presently in existence. Consequently, cases of total restraint such as *Austin* v. *Murray,* 16 Pick. 121, and the cases from other jurisdictions cited by the respondents are readily distinguishable. "On this point binding precedents establish the test to be whether the provisions of the ordinance as applied to the plaintiffs and their properties 'are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " *Wilbur* v. *Newton,* 302 Mass. 38, and cases cited at

page 39. The city had the right to determine whether the public interests demanded an exercise of the power to pass a zoning ordinance and to select the measures that were necessary for the purpose. *Simon* v. *Needham,* 311 Mass. 560, 562. If the question is fairly debatable, the court cannot substitute its judgment for that of the municipality. *Simon* v. *Needham, supra,* 564. The regulation of cemeteries and the burial of the dead being fairly within the police power (see *Sohier* v. *Trinity Church,* 109 Mass. 1, 21; *Woodlawn Cemetery* v. *Everett,* 118 Mass. 354, 362), we cannot say that the ordinance is an unreasonable method of exercising that power. See *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358, 365; *State* v. *District Court of Ramsey County,* 114 Minn. 287, 291; *Mayor & Common Council of Newark* v. *Watson,* 27 Vroom, 667; *Moritz* v. *United Brethrens Church on Staten Island,* 269 N. Y. 125.

*Orders affirmed.*