TOWN OF MANCHESTER vs. EDGAR PHILLIPS.

Essex.    January 2, 1962. — February 9, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Zoning*, Trailer. *Equity Jurisdiction, Zoning. Estoppel. Trailer.*

A municipality is empowered by G. L. c. 40A, §§ 2, 3, to regulate trailers
   or mobile homes by its zoning ordinance or by-law.   [595]
Under a town's zoning by-law permitting a "Detached one-family dwell-
   ing" in a single residence district and defining the word "Dwelling" as
   meaning "a building . . . either designed or used as living quarters,
   but . . . [as not including] an overnight camp, trailer, or mobile home,"
   a trailer or mobile home was not permitted on a lot in a single resi-
   dence district even though its wheels had been removed, water, sewer,
   and electric connections had been made, and it was intended to affix the
   trailer or mobile home permanently to a concrete foundation upon the
   lot, to construct a veranda and brick steps, and to do extensive land-
   scaping of the lot.   [592–593, 595–596]
A town was not estopped to maintain a suit in equity to enjoin a land-
   owner from using a trailer as his residence and to compel him to re-
   move it from his land as in violation of the town's zoning by-law even
   though more than three months elapsed between the time the landowner
   notified the selectmen he intended to place the trailer upon his land as a
   "permanent home on permanent foundation" and the time the selectmen
   first moved to enforce the by-law, and during that period the landowner
   purchased the trailer, contracted for the construction of a concrete
   foundation for it on his land, installed utility connections, and bought
   loam and made other arrangements preparatory to extensive land-
   scaping.   [597]

BILL IN EQUITY, filed in the Superior Court on December
28, 1960.

The suit was heard by *Lurie, J.*

*Carlton W. Spencer,* (*Thomas G. Howarth & Frank G.
Allen, Jr.,* with him,) for the plaintiff.

*Samuel F. Hyland,* for the defendant.

CUTTER, J.   The town by this bill in equity (G. L. c. 40A,
§ 22, inserted by St. 1954, c. 368, § 2) seeks to require the
removal of a "mobile home" from land owned by Phillips,
on the ground that it was placed there in violation of the

Manchester zoning by-law (see footnote 1, *infra*). In the Superior Court a decree was entered dismissing the bill. The town appealed. The evidence is reported. The facts, as found by the judge, are stated below.

The relevant provisions of the by-law are set out in the margin.[1] Phillips' land is in a single residence district. On September 12, 1960, Phillips gave notice to the selectmen that he proposed to place upon his land a "trailer to be made [a] permanent home on permanent foundation connected with water, sewer, electricity." Receipt of the notice was acknowledged on the next day. Phillips then applied to the water department and the electric company for water, sewer, and electric service. He "contracted for a . . . concrete strip [six inches deep on four inches of stone fill] 51 feet long and 20 feet wide to be erected on his land." He "purchased, for an overall cost of more than" $7,000 a "mobile home . . . without the wheels" which he intended to place permanently upon his land by affixing it to the concrete foundation by steel connecting rods.

Water and sewer connections were made and the electric company installed its underground service. After the delivery of the mobile home, its "wheels . . . were removed and are the property of the vendor."[2] Phillips planned to add, at a cost of about $350, a canopy thirty-five feet long

---

[1] The zoning by-law was adopted in 1945 and, as in force on March 12, 1956, read in part, "Section III. Use Regulations. A. Single Residence Districts. In a [s]ingle [r]esidence [d]istrict except as herein otherwise provided, no building or land shall be used and no building shall be erected or altered which is intended or designed to be used for a store or shop, or for manufacturing or commercial purposes, or for other purposes except one or more of the following: 1. Detached one-family dwelling . . . ." Other uses permitted in a single residence district were churches, nonprofit educational use, boarders (but not overnight camps), municipal use, parks, playgrounds, recreational use, accessory uses, doctors' and similar professional offices, customary home occupations, clubs, cemeteries, accessory garages (not more than three automobiles), charitable nonprofit use, and public utility buildings (other than service station and outside storage).

By amendment, adopted on March 10, 1958, and approved by the Attorney General on April 10, 1958, I, A, of the by-law was altered to read in part: "Section I. Definitions. A. In this by-law the following terms . . . shall have the following meanings: . . . 8. Dwelling. — The word 'Dwelling' shall mean a building or a portion thereof, either designed or used as living quarters, but shall not include an overnight camp, trailer, or mobile home."

[2] Phillips has paid the water department $307.93, the electric company $67.33, and the contractor who laid the concrete strip $360.

and ten feet wide with six wrought iron supporting pillars enclosed in a screen. This was to be a veranda. He intended to build brick steps to his doors. He bought forty-five yards of loam to prepare for a lawn and "made arrangements to secure 1,300 privet bushes preparatory to his intended extensive landscaping." The completion of the foundation, the permanent affixing of the unit thereto, the construction of the veranda and the brick steps, and the landscaping have been prevented by injunction secured by the town on December 28, 1960.

The mobile dwelling was "a well designed compact living unit, elaborately equipped with kitchen, living room, two bedrooms, a bath and a long connecting hall." It contained a washing machine, dryer, refrigerator, and oil heat which was to have been converted to gas. Pictures show what is unmistakably the superstructure of a partly metal mobile unit, situated in an area in which there are modest but neat conventional frame houses. A pencil sketch showed this unit as to be somewhat disguised by the canopy, the planting of some shrubs, and the laying out of low privet hedges.

The trial judge referred to the provisions of G. L. c. 140, § 32L, and G. L. c. 111, §§ 128B, 128D.[3] He saw in these statutes "a reaffirmation that a mobile home is a type of vehicle," despite the reference to foundations in § 32L. He then stated that the "problem . . . reduces itself to . . . determining whether what clearly was once a mobile home is forever to remain such" and concluded that the by-law did not exclude from a single residence district "a mobile home . . . severed of its mobility" and ruled "as matter

---

[3] These statutes relate only vaguely, if at all, to the present issues. Their concern is with matters other than zoning. General Laws c. 140, § 32L (inserted by St. 1956, c. 444), for the purposes of the regulation of trailer parks under §§ 32A–32K, defines "trailer coach" as "any vehicle . . . on wheels and having no motive power of its own . . . so designed . . . as to permit . . . occupancy . . . for human habitation, whether resting on wheels, jacks or other foundation" including specifically "the type of vehicle commonly known as a mobile home." See *Cliff* v. *Board of Health of Amesbury, ante,* 58, 62. General Laws c. 111, § 128B and § 128D (inserted by St. 1954, c. 209, § 2), deal with health regulation of places used for human habitation, which are described as including any "building, tenement, room, cellar, mobile dwelling place or any other structure." Section 128D has been revised by St. 1960, c. 172, § 2.

of law that the defendant's dwelling is not in violation of the zoning by-law.''

The judge's subsidiary findings of fact were justified. The principal question is the interpretation of the by-law (see footnote 1, *supra*).

The permitted use (§ III, A, 1) was a ''[d]etached one-family dwelling.'' Without more, this language would import only ''structures of the type ordinarily thought of as houses.'' See *Marblehead* v. *Gilbert,* 334 Mass. 602, 604, where we said that the term ''[o]ne-family detached houses'' had reference to ''buildings of some permanence and solidity which would be appropriate in a normal single family residential district,'' and that a ''trailer on wheels . . . [was] not adapted for the type of permanent dwelling use . . . contemplated by the by-law.'' We there dealt, of course, with a trailer, not affixed to the land, which could be moved at any time and had insubstantial connection with water and electric utilities. Some reliance was placed upon these circumstances and upon the fact that the Marblehead by-law prohibited a ''camp'' as an accessory use. We noted that a movable trailer ''more naturally comes within the term 'camp' '' than the term ''house.'' Nevertheless, the language of the decision recognized a possible broader scope of the by-law's prohibition, for it was said (p. 605), ''In adopting the by-law, there plainly was no intention to include, within the class of dwellings permitted by § 4 in single residence districts, trailers and similar vehicles *or structures,* for they would be inconsistent with the sound and natural development of such a district. The terms used in § 4 of the by-law must be construed in a manner fairly to come within its spirit and intent'' (emphasis supplied).

The Manchester by-law is more explicit. The 1958 amendment (§ I, A, 8, see footnote 1, *supra*), adopted about one year and a half after the *Marblehead* decision, excludes from the term ''[d]welling,'' any ''overnight camp, trailer, or mobile home.'' It is contended, however, that the amendment excludes only units which remain mobile.

A town has power by its zoning by-law, and by other by-laws, to regulate trailers and mobile homes. See *Granby v. Landry,* 341 Mass. 443, 445. The zoning power includes the power within districts to "regulate and restrict the erection . . . or use of buildings, and structures, or use of land." G. L. c. 40A, § 2 (as amended through St. 1959, c. 607, § 1). That power may be exercised, not only to conserve the obvious aspects of health and safety (cf. *Gillam v. Board of Health of Saugus,* 327 Mass. 621, 622) but also (§ 3) "to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the . . . town; and to preserve and increase its amenities." See *Opinion of the Justices,* 333 Mass. 773, 778–780; *Opinion of the Justices,* 333 Mass. 783, 787–788; *Berman v. Parker,* 348 U. S. 26, 33 ("It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled"). A town may reasonably consider that this type of dwelling unit, frequently but not always found on wheels, (a) is detrimental to the values of adjacent conventional single family houses, even if the body of a once mobile unit is permanently affixed to the land; and (b) tends to depreciate, contrary to the public interest, the amenities and appearance of a residence district. The presence of trailers may also "tend to stifle development of the area for residential purposes." See *Napierkowski v. Gloucester,* 29 N. J. 481, 493–494. There is ample justification for confining trailers and mobile units to areas where they will not injure the investment (perhaps representing a substantial part of family resources) in conventional houses of other owners, hurt taxable values, and impede town development.

We think that Manchester by apt words has excluded the mobile home type of unit from the category of dwellings. The words of the by-law, interpreted "according to their natural import in common and approved usage" (see *Foster v. Mayor of Beverly,* 315 Mass. 567, 569; *Marblehead v. Gilbert,* 334 Mass. 602, 605), have equal application to this type of unit whether equipped with wheels or without them.

They refer, we think, to this species of self contained unit, which frequently is in form a mobile trailer, in contrast with the conventional type of house usual in, and appropriate to, a single family residence district. In ordinary parlance the unit shown in the exhibits will be spoken of as a trailer or a mobile home, even if it has not been sold with wheels or its wheels have been taken away, and even if it has been affixed to the land. It looks like a trailer, has the qualities of a trailer superstructure, and has been built as a trailer. There is no such ambiguity about the language of the by-law as to lead us to interpret it strictly against the public interest because it will operate in derogation of the landowner's ability at common law to make unrestrained use of his property. Cf. *Corcoran* v. *S. S. Kresge Co.* 313 Mass. 299, 303–304.

The interpretation of by-laws and ordinances of this general type is a matter upon which courts have differed. Some support for the interpretation which we make is found in decided cases. Certain of these seem to us to express a view consistent with the general purpose of such zoning, although they state a diversity of reasons for the results and deal with provisions of statutes, ordinances, and by-laws in various respects different from those in force in Manchester. See *Napierkowski* v. *Gloucester,* 29 N. J. 481, 485, 490–494 (concrete foundation, but whether wheels to be removed not clear); *Cooper* v. *Sinclair,* 66 So. 2d (Fla.) 702, 704–706 (trailer may not have been affixed to land); *Jones* v. *Beiber,* 251 Iowa, 969, 973 (trailer with wheels removed and mounted on cement blocks held within a restrictive covenant forbidding a "garage, trailer, shack or hut . . . [to] be used for living purposes"); *New Orleans* v. *Louviere,* 52 So. 2d 751, 752 (Ct. App. La.) (wheels not removed, placed on temporary blocks to preserve tires); *Connor* v. *West Bloomfield Township,* 207 F. 2d 482, 483 (6th Cir.) (where the trailer may still have been mobile).[4]

---

[4] For other cases, which in varying degree are consistent with municipal regulation of trailer units, although on their facts different from the present case either in the matter of the mobility of the unit or otherwise, see *Davis* v. *Mobile,* 245 Ala. 80, 82–83; *Kimsey* v. *Rome,* 84 Ga. App. 671, 672–674;

In other cases, zoning, building, and other regulatory provisions (not as specific as those in force in Manchester) have been interpreted favorably to the admission to residential areas of permanently fixed trailers. *Lescault* v. *Zoning Bd. of Review of Cumberland,* R. I. , .[5] In *Re Willey,* 120 Vt. 359, 363–366 (strict construction of ordinance adopted).[6]

Upon receipt of notice on September 12, 1960, of the defendant's intention to place such a unit upon his land, the selectmen appropriately might have moved much more promptly to enforce the by-law. They did move on December 21, 1960. In any event, the town is not estopped to take enforcement action. See *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 283; *Haverhill* v. *DiBurro,* 337 Mass. 230, 238; *Welch* v. *Contributory Retirement Appeal Bd., ante,* 502, 512. See also *Collins* v. *Boston,* 338 Mass. 704, 709.

The final decree is reversed. A new decree is to be entered enjoining the defendant from using his mobile home unit as his residence and directing that it be removed from the land.

*So ordered.*

---

*Wyoming* v. *Herweyer,* 321 Mich. 611, 614–616; *Corning* v. *Ontario,* 204 Misc. (N. Y.) 38, 40–44. See also *People* v. *Lederle,* 206 Misc. 244, 249–250, affd. 285 App. Div. (N. Y.) 974, affd. 309 N. Y. 866. For general discussion of the zoning, tax, and regulatory problems presented by trailers and mobile home units, and of somewhat related questions, see Hodes and Roberson, The Law of Mobile Homes, §§ 7.1–7.7; McQuillin, Municipal Corporations (3d ed.) §§ 24.564, 24.621; Rhyne, Municipal Law, §§ 26–40, 32–42, 32–44; Note, 22 Univ. Chi. L. Rev. 738; Anno. 22 A. L. R. 2d 774. See also Haar, Zoning for Minimum Standards, 66 Harv. L. Rev. 1051, and Wayne Township: Zoning for Whom? 67 Harv. L. Rev. 986; Nolan and Horack, How Small a House? 67 Harv. L. Rev. 967; Kelsey, The Place of Aesthetics in Comprehensive Zoning in Massachusetts, 43 Mass. L. Q. (No. 3) 60.

[5] 162 Atl. 2d 807, 809–810.

[6] For other cases of this general character, see *Aetna Life Ins. Co.* v. *Aird,* 108 F. 2d 136 (5th Cir.), (where a detached trailer was held to be a "building" within a policy insuring against injury by burning of a building); *Brodnick* v. *Munger,* 102 N. E. 2d 48 (Ohio Common Pleas), affd. 111 N. E. 2d 695 (Ct. of Appeals, Ohio) (trailer not within statute authorizing promulgation of building regulations); *Astoria* v. *Nothwang,* 221 Ore. 452, 458–461 (permanent placement of trailer held not a violation of ordinance forbidding the parking of trailers on residential property, although city could enact a zoning ordinance); *Lower Merion Township* v. *Gallup,* 158 Pa. Super. 572, 574–576 (trailer subject to building code as a "mobile house"), app. dism. 329 U. S. 669; *Commonwealth* v. *McLaughlin,* 168 Pa. Super. 442, 445–446; *Hunter* v. *Richter,* 9 D. & C. 2d (Pa.) 58, 72; *Commonwealth* v. *Flannery,* 1 D. & C. 2d (Pa.) 680, 683. Cf. however, *Commonwealth* v. *Stong,* 15 D. & C. 2d (Pa.) 440.