RICHARD H. ELLIS & another vs. BOARD OF ASSESSORS
OF ACUSHNET.

Suffolk. November 5, 1970. — December 30, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

Real Property, What constitutes, Mobile home. Taxation, Real estate
tax: mobile home. Constitutional Law, Taxation. Statute, Construc-
tion. Mobile Home.

St. 1964, c. 592, was designed to deal with problems concerning mobile
homes other than the taxation thereof, and in view of the similarity
of the description of a mobile home in § 14 to a traditional dwelling,
was construed as not exempting all mobile homes within the descrip-
tion from local taxation under G. L. c. 59, § 38, in order to avoid
creation of a dual standard of taxation and doubts as to the consti-
tutionality of St. 1964, c. 592. [477]
A mobile home, a factory built prefabricated structure approximately
sixty by twenty-four feet, shipped over the road to land of the owners
of the mobile home licensed and operated as a mobile home park, con-
taining bedrooms and other rooms and facilities customary in a tradi-
tional dwelling, resting on a poured concrete foundation with a full
cellar containing a furnace and oil storage tank, and without wheels
or axle, and used and occupied by its owners "as their year round
dwelling," constituted "real estate" under G. L. c. 59, § 3, and was
subject to taxation under § 38, in 1968; the provisions of G. L. c. 140,
§ 32L and § 32G, as amended by St. 1964, c. 592, and G. L. c. 59, § 5,
Thirty-sixth, did not exempt the mobile home from such taxation.
[473, 478]

APPEAL from a decision of the Appellate Tax Board for
the appellee following its refusal to abate a tax for the year
1968.

Gerald Franklin (Harold Hurwitz with him) for the ap-
pellants.

Ferdinand B. Sowa for the appellee.

TAURO, C.J. This is an appeal from a decision of the
Appellate Tax Board classifying the appellants' dwelling
as real estate under G. L. c. 59, § 3.

The appellants (Ellis) own a parcel of land in the town
of Acushnet which is licensed and operated as a mobile home

park pursuant to G. L. c. 140, § 32B, as amended. On March 13, 1967, the appellants purchased from the manufacturer, Gibraltar Industries, Inc. of Baltimore, Maryland, the factory built prefabricated home that the appellants occupy as a permanent dwelling at the mobile home park. The completely fabricated structure was shipped over the road from Baltimore to the appellants' parcel of land on the vendor's axle and wheels with the "I" beams serving as a chassis. The appellants were charged $860.45 "over the road fees which included freight tolls, flag fees and setup charges."

The issue is whether this dwelling on the appellants' land is a "mobile home" within the meaning of G. L. c. 140, § 32L, subject to a license fee under G. L. c. 140, § 32G, and free from property tax as provided in G. L. c. 59, § 5, Thirty-sixth, or whether the dwelling constitutes "real estate" within the meaning of G. L. c. 59, § 3, and subject to property taxation under G. L. c. 59, § 38.

We summarize the facts as found by the Appellate Tax Board from the evidence which includes building specifications and photographs of the dwelling. The dwelling is described as "a structure approximately 60 feet long by 24 feet wide containing 3 bedrooms, living room, kitchen, dining room, utility room, stairwell to cellar and one and a half baths. There are four doorways, about 14 windows, a vent flue pipe and a chimney on the roof. The exterior is of bonded aluminum siding with aluminum storm windows, doors and window shutters. The exterior pitched roof has asphalt windseal shingles with full gutters and rainspouts. The interior roof is a $3/8''$ plywood sub-ceiling with a $1/2''$ acoustical tile ceiling underlined with 2'' fiberglass insulation. The walls are supported by 2 by 4 studs with hardwood interior paneling and fiberglass insulation. All of the plumbing, sanitary and electrical facilities are factory installed. This home is resting on, and its frame is solidly attached to, a 10'' poured concrete foundation with a full cellar. The base frame is manufactured with supporting metal 'I' beams running across as well as the length of the

home. The cellar contains an oil fired hot water heating furnace and separate 275 gallon oil storage tank. There are no wheels, axle, or hitching post attached to this home nor were these items ever purchased by the appellants. The appellants use and occupy the premises as their year round dwelling."

The Appellate Tax Board found that "in almost every practical respect concerning the design, architecture, size, accommodations, durability, permanence, character, and use, the structure looks like and serves the purpose of a conventional home . . . ." For purposes of tax classification, the board finds, "in so far as it is a question of fact, that this home is identical to any other conventional home which is classified as real estate under G. L. c. 59, § 3, and taxed pursuant to G. L. c. 59, § 38."

The Appellate Tax Board stated, "Although G. L. c. 140, §§ 32F and 32L, defines the meaning of a mobile park and a mobile home, a literal reading of these statutes does not foreclose the issue of taxation in every instance." We agree.

The law is well settled that land and buildings erected thereon or affixed thereto are properly taxed as a unit and this rule is not affected by private agreements or by the degree of physical attachment to the land. *Franklin* v. *Metcalfe*, 307 Mass. 386, 389, and cases cited.

The initial exemption of certain classes of movable dwellings from the real estate tax came about through St. 1952, c. 583, §§ 1 and 2. Section 1, amending G. L. c. 140, § 32G, subjected a "trailer coach" to a license fee but exempted it from a property tax. Section 2 added clause Thirty-sixth to c. 59, § 5, exempting trailer coaches subject to the license fee from the local property tax. The constitutionality of these statutes was upheld in *Wright* v. *Peabody*, 331 Mass. 161, 165. In that case this court said, "It clearly was the purpose of the Legislature to stop what it regarded as unfairness and abuses arising out of the arbitrary classification of all trailer coaches in trailer coach parks as real estate." In this connection the Appellate Tax Board stated that

"Based on specific facts concerning the type of 'trailer coaches' as described and applicable to the *Wright* case and the legislative intent regarding taxation at the time of this decision, it is clear to this board that the facts and the ruling of the court in the *Wright* case do not apply to the facts and law applicable to the instant case. The reason for the distinction is the essential change in the concept and structure of a 'trailer coach' and a 'mobile home' resulting from gradual evolution in the concept of moveable living quarters or habitations."

By St. 1956, c. 444, inserting § 32L in c. 140, a statutory definition of a trailer coach was added. This definition stated in part, ". . . 'trailer coach' shall mean any vehicle or object on wheels and having no motive power of its own, but which is drawn by, or used in connection with, a motor vehicle, and which is so designed . . . as to permit the use . . . for human habitation, whether resting on wheels, jacks or other foundation and shall include the type of vehicle commonly known as a mobile home."

Statute 1964, c. 592, § 14, rewrote G. L. c. 140, § 32L, by striking out that section and substituting a new section, eliminating all reference to "trailer coaches," and defining "mobile home" for the first time as follows: "As used in sections thirty-two A to thirty-two K, inclusive, the words 'mobile home' shall mean a dwelling unit built on a chassis and containing complete electrical, plumbing and sanitary facilities, and designed to be installed on a temporary or permanent foundation for permanent living quarters."

The Mobile Homes Commission was created by St. 1962, c. 487, § 2. The first report of the commission gives a history and evolution from the small mobile camp travel trailer to the present mobile home structure. The commission reported in part, "Since the definition of a trailer coach was adopted in 1956, the travel trailer and the mobile home have become two different products. Now that the Department of Public Health has adopted Sanitary Code, Article VIII, regulating camp grounds, including travel trailer parks, Chapter 140 need no longer refer to travel

trailers. This being the case, it appears very desirable to the commission to have the definition of a mobile home properly describe the current property on the market."

In its reports the commission strongly recommended to the Legislature that mobile homeowners be taxed on the same basis under c. 59, § 38, as conventional homeowners and the exemption allowed under c. 59, § 5, Thirty-sixth, be repealed as to certain mobile homes. However, no specific recommendation concerning taxation had been presented by the Mobile Homes Commission to the Legislature before the enactment of St. 1964, c. 592. We conclude from this chronology that the Legislature in St. 1964, c. 592, was not concerned with taxation but rather desired to deal with other problems. A contrary construction of this statute would create a dual standard of taxation and thus present a serious question as to its constitutionality in view of the similarity between the mobile home as described in the legislation and the traditional dwelling subject to a real estate tax. See *Opinion of the Justices,* 324 Mass. 724; *Opinion of the Justices,* 332 Mass. 769, at 779; *Opinion of the Justices,* 344 Mass. 766.

Article 10 of the Declaration of Rights of the Massachusetts Constitution states in part, "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged consequently, to contribute his share to the expense of this protection . . . ." In *Opinion of the Justices,* 324 Mass. 724, 729, the court said, "It seems plain that a tax assessed upon most property at the current rate but upon other property at a lower rate . . . is not 'proportional' to property owned."

The constitutionality of a statute should be sustained in absence of evidence clearly to the contrary, since not only is a statute presumed to be constitutional but it must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts on that score. All rational presumptions are made in favor of every legislative enactment, and invalidity will be found

only when a statute is in manifest excess of legislative power. *Mansfield Beauty Academy, Inc.* v. *Board of Registration of Hairdressers,* 326 Mass. 624.

We conclude that there was no error in the decision of the Appellate Tax Board.

*Decision affirmed.*