BOARD OF SELECTMEN OF HATFIELD *vs.*
JAMES D. GARVEY & another.

Hampshire.   November 10, 1972. — January 16, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Zoning,* Mobile home.   *Equity Pleading and Practice,* Master: ruling
of law, confirmation of report.   *Words,* "Mobile home."

Certain purported "findings" by a master in a suit in equity were
rulings of law which he was not empowered to make by the order of
reference, but since his report as modified was confirmed by inter-
locutory decree, the judge of the Superior Court was presumed to
have made his own rulings from the master's findings.   [822]
The definition of a "mobile home" under G. L. c. 140, § 32L, primarily
relates to licensing and regulating mobile home parks, and is not
controlling in the interpretation of municipal zoning by-laws or
ordinances.   [825–826]
The zoning by-law of a town, by using the words "mobile homes" to
describe structures specifically permitted in certain business dis-
tricts, indicated an intent that the mobile structures should have
some structural features resembling a home.   [825–826]
The ultimate finding by a master in a suit in equity to enjoin an
alleged violation of the zoning by-law of a town, that a unit placed
on the defendants' premises in a residential district was a "mobile
home," was inconsistent with the master's subsidiary findings, in-
cluding findings that the manufacturer had constructed the unit
specially for use as a liquor store, with rooms and appliances
pertaining thereto, that the unit had no sanitary facilities and was
not intended for use as a dwelling unit, that the unit was sitting on
two rows of cinder blocks on a set foundation, and that the "usual
Mobile Home consists of 5 rooms including bath"; the trial judge
correctly ruled that the defendants' unit was not a "mobile home,"
and the final decree dismissing the bill was affirmed.   [827–828]

BILL IN EQUITY filed in the Superior Court on January
5, 1971.

The suit was heard by *Linscott, J.,* on a master's report.

*Elizabeth A. Porada* for the Board of Selectmen of
Hatfield.

TAURO, C.J.   The plaintiff, the board of selectmen of
Hatfield (board), in its bill in equity seeks injunctive
relief to force the defendants to remove from their prop-

erty a certain structure, described by the board as a mobile home or trailer, which allegedly was not in compliance with the terms of a building permit issued by the board and in violation of the zoning by-law of the town of Hatfield. The defendants denied that the structure was a mobile home or trailer, contending that the "building" was erected in compliance with the permit and not in violation of the town by-law.

1. The case was referred to a master who heard the parties and their witnesses and took a view. The master recited detailed subsidiary findings and reported his ultimate findings to be "[u]pon all the evidence and the reasonable inferences to be drawn therefrom . . .." He found that (1) the defendant's premises are in a residence A district; (2) the unit in question is a mobile home; (3) a mobile home is not a permitted use in a residence A district; and (4) the "placement" of the unit on the defendants' premises was in violation of the local zoning by-law. The evidence is not reported.

The third and fourth "findings" are more properly considered rulings of law (*Manchester* v. *Phillips*, 343 Mass. 591, 593–594) which the order of reference appointing the master did not empower him to make. *Cook* v. *Scheffreen*, 215 Mass. 444, 449. But since the master's report was confirmed as modified by the Superior Court judge, he must be presumed to have made his own rulings from the master's findings.. *Cook* v. *Scheffreen, supra*, 449. See *Corrigan* v. *O'Brien*, 353 Mass. 341, 346; *International Tel. & Tel. Corp.* v. *Hartford Acc. & Indem. Co.* 357 Mass. 282, 287.

The defendants filed two objections to the master's report. The judge, in an interlocutory decree, sustained the objections as exceptions and confirmed the master's report as so modified. A final decree was then entered dismissing the board's bill, and the board appealed from both decrees.[1]

The pertinent facts as found by the master are sum-

---

[1] The defendants have not submitted a brief.

marized. For "over nine years" before 1970 the defend-
ants had operated a package store, laundromat and tavern
on their premises in a wooden building. The building
was L shaped with a second story extending over part of
the premises, on a foundation, with wrought iron
columns supporting the roof. In 1970 a fire completely
destroyed the premises.

One of the defendants, James D. Garvey, filed an ap-
plication with the board for a building permit in which
he indicated that the purpose of the structure was to
house a laundromat and a package store; that the build-
ing materials were to be aluminum, steel and wood; and
that the building would be one story high on a concrete
block foundation. After receiving the permit the defend-
ants contacted a manufacturer of mobile homes to build
a unit with an office, salesroom and storage space.[2] The
master found that the "usual Mobile Home consists of 5
rooms including bath." As further distinguished from
the usual mobile home, the defendants' unit has wooden
doors and no windows in the back portion. It has heavier
floors and more insulation. On delivery of the unit, the
attached wheels and undercarriage were removed and
the unit, which has no sanitary facilities, was placed on
a foundation of cinder blocks.

The defendants' premises are located in a "mostly
single family residential" area although there is a nearby
market and across from the defendants' premises is a
"dilapidated barn." The property is in a residence A
district which restricts use to detached one family dwell-
ings and other uses not here pertinent. Before placing
the unit on their land the defendants were warned by a
member of the board not to do so because the placement
of a "mobile home" on the premises would be in violation
of the zoning by-law. The defendants took the position
that the structure was a modular unit and not a mobile
home, and the unit was installed.

---

[2] It appears that this was the first unit the builder had made for
business rather than for residential purposes.

The board argues that the use of the defendants' property before the fire "as a package store, cafe and laundromat . . . [constituted] a nonconforming use," and that the "said uses were carried on and conducted in a wooden frame building and not in a trailer or mobile home." The argument continues that because the old building was totally demolished by fire, any new construction must conform to the zoning by-law, and we agree. The only violation of the by-law specifically alleged and argued is that the defendants' unit is a "mobile home" and therefore does not conform with the by-law.[3] We restrict our decision to a consideration of this issue.

Since the defendants have not claimed, and do not appear to be entitled to, any exception to the structure requirements of their district, they, like other builders in the area, must comply with the by-law in this respect. We agree with the board's argument that it was "the intention of the draftsmen in drawing the zoning by-laws of the town to restrict . . . [mobile homes] to a business B district."

The portion of the by-law governing residence A districts does not include "mobile homes" in its list of permitted uses. "It is a 'familiar principle of interpretation that express mention of one matter excludes by implication other similar matters not mentioned.'" *Foster* v. *Mayor of Beverly*, 315 Mass. 567, 569. *Building Inspector of Chelmsford* v. *Belleville*, 342 Mass. 216, 218. Since "mobile homes" are specifically permitted in business B districts, it would seem that the exclusion of these structures from residence A districts did not occur through oversight. *Foster* v. *Mayor of Beverly, supra*, at 570. We conclude, therefore, that the defendants are not permitted to replace their old building with a "mobile home." It is thus crucial to the case whether the defendants' unit is properly described as a "mobile home."

The defendants excepted to the master's finding that

---

[3] The question of the defendants' right to rebuild at all, after their structure was totally destroyed, was not argued. See G. L. c. 40A, § 5.

the unit was a mobile home because such a finding was "inconsistent with the description of the unit by the Master as a building ordered and erected for business purposes" and because such a finding conflicted with the definition of a mobile home as outlined in G. L. c. 140, § 32L.[4]  The trial judge sustained this exception "as to the ultimate finding that the unit placed on the premises is a mobile home." [5]

Where the evidence is not reported both the trial judge and the appellate justices are required to treat the master's findings of fact as binding unless they are mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law. *Sturtevant* v. *Ford,* 280 Mass. 303, 308. *Smith* v. *Knapp,* 297 Mass. 466, 469. *Boxborough* v. *Joatham Spring Realty Trust,* 356 Mass. 487, 489. *Gil-Bern Constr. Corp.* v. *Medford,* 357 Mass. 620, 623.  Thus we must decide whether the trial judge was justified in modifying the master's report by sustaining the defendants' exceptions.

The defendants objected that the master must use the phrase "mobile home" as it is defined in G. L. c. 140, § 32L.  In *Manchester* v. *Phillips,* 343 Mass. 591, 593,

---

[4] The statute was designated by the defendants as "Massachusetts General Laws, Chapter 140, Section 32 (1)" which was stated to define mobile homes: " 'As used in Section 32 (h) to 32 (k) inclusive, the words "Mobile home" *shall* mean a *dwelling unit* built on a chassis and containing complete electrical, plumbing, and sanitary facilites, and designed to be installed on a temporary or permanent foundation, for *permanent living quarters.*' (Emphasis supplied)."  In fact there is no § 32 (l) of c. 140.  We presume the defendants were referring to § 32L of that chapter, as appearing in St. 1964, c. 592, § 14, which reads: "As used in sections thirty-two A to thirty-two K, inclusive, the words 'mobile home' shall mean a dwelling unit built on a chassis and containing complete electrical, plumbing and sanitary facilites, and designed to be installed on a temporary or permanent foundation for permanent living quarters."

[5] The defendants also excepted to the master's finding that the "placement" of the unit upon the premises was in violation of the zoning by-law on the ground that the master's admission that he was unable to determine the street lines abutting the defendants' premises prevented such a conclusion.  The second exception was sustained "as to the ultimate finding that the unit is a mobile home and thus may not be located on the land in question under the applicable zoning by-law." It appears, therefore, that the second exception was treated as an exception to the finding that the unit was a mobile home.  The particular placement of the unit within the area comprising the defendants' premises does not appear to be in dispute.

n. 3, we stated that G. L. c. 140, § 32L, related "only vaguely, if at all, to . . . [the interpretation of a zoning by-law. The statute's] concern is with matters other than zoning." See also *Ellis* v. *Assessors of Acushnet,* 358 Mass. 473, 474. We believe that the definition of a "mobile home" under G. L. c. 140, § 32L,[6] primarily relates to licensing and regulating mobile home parks as outlined in § 32A through § 32K and is not controlling in the interpretation of municipal zoning by-laws.

The board argues that the master's use of the phrase "mobile home" must be controlled by its use in the portion of the by-law regulating business B districts. Generally, a zoning by-law must be read in its complete context and be given a sensible meaning within that context. *Rando* v. *Board of Appeals of Bedford,* 348 Mass. 296, 297–298. *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 258–259. Under the zoning by-law of the town of Hatfield "mobile homes" are a permitted use within a business B district. The board maintains that the placement of mobile homes within a business district implies that the draftsmen of the by-law were aware of the commercial uses of mobile homes, and that therefore the master's finding that the unit was a mobile home, in violation of the by-law, was justified and should not have been deleted from the master's report by sustaining the defendants' exceptions. We cannot agree.

The by-law, which permits the placement of mobile homes in a commercial district, does not necessarily imply a recognition of the commercial uses of mobile homes. It may simply be a method of banning such homes from certain residential districts. Business B districts allow "[a]ny use permitted in a Business District A" and business A districts allow "[a]ny use permitted in a Residence District A." It follows that "mobile homes" in a business B district may be used for dwelling purposes. Even if the by-law were considered to recognize that some mobile homes in business B districts may be used for commercial

---

[6] See n. 4, *supra.*

purposes, that would not indicate that a mobile unit, constructed solely for commercial purposes and having none of the features of a home, should be classified as a mobile home under the by-law. We think that the use of the phrase "mobile home" rather than "mobile unit" or the like indicates an intention that the mobile structures referred to in business B districts should have some structural features resembling a home.

We believe that the master's findings that the manufacturer constructed the unit specially for use as a liquor store, that the unit contained an office, salesroom, storage space, and no sanitary facilities, was not intended to be used as a dwelling unit, had reinforced floors, extra insulation, no windows at the back and three wooden doors at the front, contains a built-in walk-in refrigerator, two portable coolers and a cash register, and that the unit is sitting on two rows of cinder blocks on a set foundation, are mutually inconsistent with his findings that it was in fact a mobile home, especially in light of his finding that the "usual Mobile Home consists of 5 rooms including bath."

Our opinion in *Manchester* v. *Phillips, supra,* which included an extensive review of analogous cases and authorities (343 Mass. 591, 596–597, and notes 4 and 6), is not to the contrary. In that case the town by-law specifically excluded an "overnight camp, trailer, or mobile home" from the term "dwelling." We held that a trailer that had been permanently affixed to a foundation was not a "dwelling" and thus was not permitted in a single residence district. It was clear that the unit was constructed with all facilities to make it suitable for living quarters. Sewage connections had been made and it was " '. . . elaborately equipped with kitchen, living room, two bedrooms, a bath and a long connecting hall.' " 343 Mass. at 593.

The issue in the *Manchester* case was essentially whether the unit could properly be called a "mobile home" when it was no longer mobile. The issue before us in this case is whether the defendants' unit can prop-

erly be classified as a mobile home when it is neither mobile nor has the facilities of a home. In the circumstances of this case, where the town by-law has not elaborated upon the definition of "mobile home," we think that the defendants' unit cannot properly be described as a "mobile home," and that, therefore, the master's report was appropriately modified.

In light of our view that the phrase "mobile home" may import different structures in different statutory contexts, we cannot delineate any definite set of components that will necessitate the finding in all cases that a particular structure is a mobile home. In the circumstances of the instant case the judge below ruled correctly that the structure described in the master's report is not a "mobile home" as that term is used in the zoning by-law of the town of Hatfield. The trial judge was, therefore, justified in modifying the final report as he did.

*Interlocutory decree affirmed.*
*Final decree affirmed.*