AVANT, INCORPORATED *vs.* TECH RIDGE, INC.

Middlesex.    November 12, 1975. — September 29, 1976.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Contract,* Construction, License to sell patented article, Commission.

Where a corporation which had fabricated and maintained an inventory of the various components of a photo-identification system developed by the plaintiff entered into an agreement with the plaintiff to dispose of the inventory and to pay to the plaintiff commissions on sales of "components or systems manufactured by [the corporation] but which require [the plaintiff's] patents or other proprietary rights," a commission was due on the sale of an entire system on the basis of the sale price of the system, even though some components of the system were in the public domain, rather than on the portion of the sale price attributable to the individual components on which the plaintiff held patents. [570-573].

Where a corporation which had fabricated and maintained an inventory of the various components of a photo-identification system developed by the plaintiff entered into an agreement to dispose of the inventory and to pay to the plaintiff commissions based on the plaintiff's suggested list price or on the actual net invoice price if less than the list price, and the agreement contemplated that the seller would be in the same position as the plaintiff's authorized dealers and distributors, it was proper to compute commissions based on the list price for sales made by the corporation to a sales representative company organized to dispose of the corporation's excess inventory even though the actual net invoice price was lower than the list price since addition of such a sales representative to the distribution pattern had not been contemplated by the agreement. [573-575]

BILL IN EQUITY filed in the Superior Court on June 7, 1973.

The suit was heard by *Ponte,* J., on a master's report.

*John J. Madden* for the defendant.
*Stephen A. Moore* for the plaintiff.

GOODMAN, J.    In this action the plaintiff (Avant) sought, among other things, an accounting of amounts

(termed "sales commissions") which, it claimed, were owed by the defendant (Tech Ridge) under a written agreement. The case was referred to a master whose report was confirmed; a judgment was entered which (so far as relevant) was in the amount of $68,661.67, plus interest, in favor of Avant. Tech Ridge appealed and contends that the master's determination of the amounts due, on which the judgment was based, is inconsistent with the agreement in two respects. We summarize the factual background from the master's report.

Avant develops and markets photo-identification systems. Since 1963 Tech Ridge has fabricated and maintained an inventory of the various components of Avant's systems. The basic element of these systems is a camera on which Avant held a patent. The other components include a timer, die cutter, bonder, and pedestal. In late 1971 Tech Ridge had an excessive inventory of Avant products, valued at $166,934.31, and the parties undertook to work out a method of disposing of that inventory. The result was incorporated in a letter agreement from Tech Ridge to Avant, dated February 3, 1972, and signed by both parties (the agreement).

The agreement recites that it "confirm[s] the arrangements recently agreed upon between us whereby ... [Tech Ridge's] substantial inventory position in Avant component products will be liquidated" and (in section 2 of the letter) "acknowledge[s] that, heretofore, Tech Ridge has been maintaining a substantial inventory of finished and in-process component parts for Avant photo-identification systems, and that such inventory should be liquidated as promptly as possible either by sales by Tech Ridge to Avant or by sales by Tech Ridge to others according to Tech Ridge's rights as set forth in ... [section] 3 of this letter." Section 2 further sets out the terms of "all sales of such component parts and/or systems from Tech Ridge to Avant."

In section 3 Avant consents — until such time as Tech Ridge's inventory would be reduced to $7,500 — "to the sale or lease by Tech Ridge of all of the latter's inven-

tory ... of component parts and complete photo-identification systems in form heretofore sold by Avant and its dealer-distributors" and that "[s]uch sales and/or leases may be made to such parties and on such terms as may be arranged between Tech Ridge and the parties with whom it deals, *provided, however,* that this consent is limited to sales by Tech Ridge in the ordinary course of business and does not include a bulk sale by Tech Ridge of its inventory" (emphasis in original).

Avant authorized Tech Ridge to use Avant's name and sales literature; it also agreed that the "sale or lease by Tech Ridge of products or systems developed by Avant shall not constitute any violation, breach or infringement of Avant's patents ... or other proprietary rights."

The provisions of section 3 of the agreement, the construction of which is directly in dispute, recite that: "In consideration of the foregoing rights, Tech Ridge agrees to pay to Avant, with respect to sales by Tech Ridge of components or systems manufactured by Tech Ridge but which require Avant patents or other proprietary rights, a sales commission" to be calculated as set forth in the margin.[1]

1. Tech Ridge contends that it is inconsistent with the agreement for the master to have calculated the commission due on the sale of an entire system on the basis of the sale price of that system rather than on the basis

---

[1] The sales commission was to be equal to: "the *difference* between (i) the suggested selling price for such item as set forth on Avant's most recent suggested United States net user's selling price list from time to time, less 30% (or such greater discount as may then be offered by Avant to its domestic dealers or distributors for such items), and (ii) the invoice price which Tech Ridge has most recently charged Avant for such items when produced by Tech Ridge; *provided, however,* that the sales commission paid by Tech Ridge to Avant shall be reduced below the foregoing 'difference' by the same proportion by which Tech Ridge's actual net invoice price to its customer shall be less than Avant's most recent suggested United States net user's selling price" (emphasis in original). The proviso following the italicized phrase "provided however" will sometimes be referred to as the "commission reduction proviso."

Other pertinent provisions of the agreement will be referred to in the course of the discussion.

of that portion of the sale price attributable to components of the system as to which Avant had a patent or other proprietary right. We disagree.

As set out above, the agreement provides a commission "with respect to sales by Tech Ridge of components or systems ... which require Avant patents ...." It is clear that (as the master found) a "system" includes, in addition to the patented camera, components which are in the public domain and that (as Tech Ridge concedes) there is no "system" made up solely of components as to which Avant has patent or other proprietary rights. Thus, on Tech Ridge's interpretation, a commission would never be paid on a system but only on components, so that the distinction between components and systems would be obliterated and the references to systems in the agreement would become superfluous. See *Edmund Wright Ginsberg Corp.* v. *C. D. Kepner Leather Co.* 317 Mass. 581, 587 (1945). However, the agreement consistently and carefully makes a distinction between these two terms; it speaks throughout of sales of components or systems. But significantly where reference is made to the inventory from which the systems are to be constructed the agreement speaks only of, e.g., "component products" or of "component parts *for* Avant photo-identification systems" (emphasis supplied).

Further, just this distinction between components and systems (including components in the public domain and the camera on which Avant has a patent) is manifested in Avant's "suggested United States net user's selling price list" which is a basis for the computation of commissions (see fn. 1). That list contains no suggested selling price for components sold as part of a complete photo-identification system. It contains only the suggested selling prices for components sold individually and for complete photo-identification systems (the latter prices in all cases being less than the sum of the prices of the various components of each system added together). The master's use of the prices set out in that price list rather than the roundabout calculation which Tech Ridge suggests is based on the

more natural reading of the agreement. Tech Ridge's construction seems to us contrary to and unwarranted by the agreement.

Tech Ridge argues that "the master's construction of the agreement suggests a violation of the federal antitrust laws." It does not appear that the application of the Federal antitrust laws was litigated before the master, and his report is devoid of any findings addressed to this issue. Tech Ridge cites and relies on *Zenith Radio Corp.* v. *Hazeltine Research, Inc.* 395 U.S. 100 (1969), but it is not at all clear that the teaching of that civil antitrust case is applicable to the arrangement in this case which, so far as appears, was made to solve the discrete problem of Tech Ridge's excess inventory and resulted in a fair accommodation between the parties. Compare *Kelly* v. *Kosuga,* 358 U.S. 516, 521 (1959).

Further, the *Zenith* case is concerned with the factual question whether the patent was misused to exact royalties on nonpatented items. In our case there is no indication that the leverage of the patent was a factor in the negotiations or, indeed, whether the patent had any leverage at all in this "competitive industry" (the master's characterization). See *Glen Mfg. Inc.* v. *Perfect Fit Indus. Inc.* 420 F.2d 319, 320-321 (2d Cir.), cert. den. 397 U.S. 1042 (1970); *Beckman Instruments, Inc.* v. *Technical Dev. Corp.* 433 F.2d 55, 59-60, 63 (7th Cir. 1970), cert. den. 401 U.S. 976 (1971) (both of which were remanded for findings on the question of patent misuse). Indeed, Tech Ridge indicates in its brief that the negotiation of this arrangement was initiated by Tech Ridge. It may also be significant that the agreement expressly permits Tech Ridge to compete with Avant through the sale of photo-identification systems not subject to Avant's patents. Nor can we tell whether *Automatic Radio Co.* v. *Hazeltine Research, Inc.* 339 U.S. 827 (1950), which was distinguished but not overruled by the *Zenith* case, is here applicable, absent a factual record on this issue. See *Valmont Indus. Inc.* v. *Yuma Mfg. Co.* 296 F. Supp. 1291 (1969). All in all it seems to us that Tech Ridge's "suggestion"

that the antitrust laws have been violated is too specula-
tive to influence our interpretation. See *Attorney General
v. Commissioner of Ins.* 370 Mass. 791, 825 (1976). Cf.
*Dickstein* v. *duPont*, 443 F. 2d 783, 786 (1st Cir. 1971).

2. Tech Ridge argues that it is inconsistent with the
agreement for the master to have computed commissions
on the basis of Avant's "suggested United States net user's
selling price[s]" (the suggested list price) and to refuse
to apply the commission reduction proviso which comes
into play when the actual selling price is below the sug-
gested list price (see fn. 1). The objection is to the mas-
ter's failure to use as the actual selling price the amount
— about one half the suggested list price — which Tech
Ridge charged to a company called Identification and Con-
trol Systems (later incorporated and hereafter referred to
as ICS) through which all but two of Tech Ridge's sales
were handled and which the master found "was not a cus-
tomer as to which the parties contemplated sales to be
made under the February 3, 1972 agreement, but was
rather a sales representative company, organized and de-
signed to dispose of the excess inventory on hand at Tech
Ridge."[2]

These findings justify the master's use of the suggested
list prices instead of the lesser charges to ICS in comput-
ing commissions. They are not vitiated by anything in the
master's report and are binding unless the agreement it-
self, as Tech Ridge argues, precludes the result as matter
of law. *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825

---

[2] From the master's report it appears that ICS was started as a sole
proprietorship by one Dowd, who left Avant where he had been em-
ployed as New England sales manager and immediately thereafter on
May 2, 1972, "initiated arrangements with ... Tech Ridge to sell photo-
identification equipment for Tech Ridge as a manufacturer's represen-
tative." Dowd, joined in the ensuing months by several other persons
formerly employed by Avant in a marketing capacity, solicited orders
for photo-identification equipment from retail outlets and other users of
such equipment. Many of the orders received by ICS were from cus-
tomers whom the employees of ICS had originally contacted when they
worked for Avant. ICS placed the orders it received with Tech Ridge,
and Tech Ridge invoiced the ordered equipment to ICS at the lower
price.

(1973). Our reading of the agreement as a whole (*Ucello* v. *Cosentino*, 354 Mass. 48, 51 [1968]) leads us to the conclusion reached by the master.

The agreement reflects the clear intent of the parties that Tech Ridge be in the same position as Avant's authorized dealers and distributors. Thus Avant consented to Tech Ridge's sale or lease of its inventory of photo-identification systems "in form heretofore sold by Avant *and its dealer-distributors*" (emphasis supplied). The agreement also provided that, if Tech Ridge required photo-identification equipment not in its inventory for the purpose of completing orders for equipment which was in its inventory, Avant would sell such equipment to Tech Ridge "on terms not less favorable than those on which Avant . . . has last made sales of such items to any of its domestic dealers or distributors." Also the agreement provided that "it is the intent of the parties that . . . Tech Ridge is to have the same rights and access to resources to sell or lease Avant photo-identification systems and supplies as may be enjoyed at such time or times by any dealer or distributor authorized by Avant to sell such systems and supplies." Finally, if, as seems likely and as Avant asserts in its brief, the "30% (or such greater discount as may then be offered by Avant to its domestic dealers or distributors)" by which the suggested list price is reduced in the computation of commissions due Avant (see fn. 1) refers in context to the discount which Avant then gave its dealers and distributors, the result is that Tech Ridge's markup is the same as the markup received by Avant dealers and distributors.

The proviso for the reduction in commission when there has been a reduction from the suggested list price must be read in the light of the pattern of distribution envisaged in the agreement and Tech Ridge's position in it as a dealer or distributor. So read, the phrase "actual net invoice price to its [Tech Ridge's] customer" in the commission reduction proviso refers to a price charged by a dealer or distributor, lower than the suggested list price as a result, e.g., of competition with other sellers, rather

than to a lower price resulting from the distortion of the distribution pattern by the insertion of a manufacturer's representative — another layer not contemplated by the agreement. Thus the master properly computed the commissions in the context of sales by dealers or distributors within the contemplated pattern of distribution and on the basis of the prices realized on such sales — the suggested list prices. See *Radio Corp. of America* v. *Raytheon Mfg. Co.* 300 Mass. 113, 117-118 (1938). The master's computation "puts no impossible strain on the words used and comports with the dominating purpose of the transaction ... or so the judge [and the master] could rationally decide." *Antonellis* v. *Northgate Constr. Corp.* 362 Mass. 847, 851 (1973).

Here too Tech Ridge "suggests" a violation of the antitrust laws; the considerations which we discussed in part 1 of this opinion in connection with the similar argument there made by Tech Ridge are by and large applicable here as well. Further, the argument here is based on the assumption that the agreement restricts the customers to whom Tech Ridge may sell, and the cases cited by Tech Ridge (unlike this case) involve direct limitations on territory in which, and the range of customers to whom, goods may be sold. Moreover they are distinguishable from this case in other respects which we need not discuss in detail. They give us no indication that the agreement in this case as applied by the master violates the antitrust laws merely because its effect may have been to make it less profitable for Tech Ridge to do business through a manufacturer's representative. Cf. *Coats Loaders & Stackers, Inc.* v. *Henderson,* 233 F.2d 915, 926-927 (6th Cir. 1956).

*Judgment affirmed.*