WALTER J. DAVIDSON *vs.* BOARD OF SELECTMEN
OF DUXBURY.

Middlesex.    April 9, 1970. — July 1, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, REARDON,
& QUIRICO, JJ.

*License. Gasoline. Zoning,* Special permit.

Facts stated by the licensing authority of a town in its return to a peti-
tion for a writ of certiorari disclosed no arbitrary and capricious action
and constituted a sufficient basis for the authority's denial of an ap-
plication under G. L. c. 148, § 13, as amended, for a license to store and
sell gasoline and related products at a certain location because "no
public necessity existed which would take precedence over the fact
that the . . . [location] is in a narrow, dangerous congested street,
made more hazardous due to a large parking area for a [nearby] store
complex," because a proposed central Post Office in the area would
create "an additional [traffic] hazard," and because residents in the
area objected. [65–66]

An unappealed final decree in a suit in equity under G. L. c. 40A, § 21,
requiring, in effect, the granting of a special permit by the board of
appeals of a town to the plaintiff to construct a gasoline station at a
certain location, notwithstanding the board's denial of the application
for the permit because it found that an unnecessary traffic hazard
would be created, did not bar the board of selectmen of the town as
its licensing authority, upon a later application by the plaintiff under
c. 148, § 13, from denying because of traffic hazards his application for
a license to store and sell gasoline and related products at that loca-
tion. [66–68]

PETITION for a writ of certiorari filed in the Superior Court
on January 17, 1969.

The case was heard by *Hennessey,* J.

*Robert J. Geogan,* Town Counsel, for the respondent, sub-
mitted a brief.

*Vincent L. Hennessy (George F. Killgoar* with him) for the
petitioner.

CUTTER, J.    By petition for writ of certiorari Davidson
seeks to require the selectmen, the town's licensing au-

thority, to issue a license to Davidson for the storage and sale of gasoline and other products at 28 Depot Street, South Duxbury (the locus). Davidson applied for this license (G. L. c. 148, § 13, as amended through St. 1959, c. 353, § 1) after the town's board of appeals granted him a special permit to construct the station.[1] On December 19, 1968, the selectmen, after a public hearing, denied the application, because "no public necessity existed which would take precedence over the fact that the . . . [locus] is in a narrow, dangerous congested street, made more hazardous due to a large parking area for a store complex. The proposed use of this area for a central Post Office was also considered an additional hazard. The residents in the area objected to . . . the permit." The parties have stipulated that this decision of the selectmen (stated more fully in the selectmen's return to the petition, quoted below) was based "solely on the grounds" thus stated. A Superior Court judge ordered that the selectmen's decision be quashed and that a license be issued.[2] The selectmen appealed. There is a statement of agreed facts, in addition to the selectmen's return.

1. General Laws c. 148, § 13, gives to "the local licensing authority" (here the selectmen) the power to grant the license. The decision of the selectmen not to issue a license to Davidson, was not arbitrary and capricious, standing by itself. The selectmen's return states their reasons. On the evidence "they found that the vicinity, although zoned in part for business, is still to a great extent residential . . . the surfaced . . . street is less than thirty feet wide; there are no sidewalks; there are already two filling stations within

---

[1] The board of appeals had originally denied Davidson's application for a special permit under the zoning by-law because it found an unnecessary traffic hazard would be created, but on appeal to the Superior Court the decision was reversed. No appeal was taken from the final decree.

[2] He ruled that the selectmen's decision was "solely upon a ground . . . foreclosed to them" by the final decree (fn. 1) in the zoning matter and that it was "immaterial (1) that the . . . [defendants] in the . . . [zoning] suit were the [b]oard of [a]ppeals . . . and not the selectmen . . . and . . . (2) that the application here is for the keeping and selling of products and not . . . for the building of a gasoline station." He based his decision "on two grounds: (1) the action of the . . . [selectmen] was arbitrary and capricious herein, and (2) the . . . [selectmen] are foreclosed."

three hundred yards of the . . . [locus]; the . . . newly constructed A. & P. store building and additional stores with a large parking lot adjoining the locus" already create traffic hazards; the "parking lot is constructed on a slope . . . and unattended parked cars roll into the street on an average of once a week; there is a new post office in . . . the A. & P. complex and since . . . no mail [is] delivered by foot-carriers in Duxbury, there is an additional traffic problem; the establishment of a gasoline filling station with entrance and exit provisions all within a few yards of the entrance to the . . . shopping area, would definitely . . . [disturb] the orderly flow of traffic on a street . . . already too narrow; and there was no . . . public demand for another station in the immediate vicinity."

The facts thus stated are a sufficient basis for denying the application. The board's "somewhat wide discretion" (see *Scudder v. Selectmen of Sandwich,* 309 Mass. 373, 376–377; *Kidder v. City Council of Brockton,* 329 Mass. 288, 290–291) is not limited to considering fire and explosion danger. *Sherman v. Selectmen of Orleans,* 355 Mass. 786. Heavy traffic conditions may be considered. "[T]he burden is [not] on the . . . [selectmen] to justify the denial of the license." *Johnson Prod. Inc. v. City Council of Medford,* 353 Mass. 540, 543.

The return is conclusive as to all issues of fact before the selectmen and within their jurisdiction, at least in the absence of proper efforts to obtain extension of the return. See *Byfield v. Newton,* 247 Mass. 46, 53; *Marcus v. Street Commrs.* 252 Mass. 331, 335; *DiRado v. Civil Serv. Commn.* 352 Mass. 130, 132–133. On the facts shown by the return, which are not contradicted by the facts stipulated, the selectmen's action cannot be said to be "arbitrary and capricious," if their action is viewed as a decision separate and apart from the zoning decision on the special permit (fn. 1).

2. The propriety of the final decree of the Superior Court in the earlier zoning case requiring, in effect, a special permit to be granted for use of the locus for a filling station, is not

before us. We note, however, that the final decree[3] was ordered to be entered on October 7, 1968, well before our decision (announced January 31, 1969) in *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277–278. The present petitioner contends (as the trial judge ruled) that the earlier zoning decision (fn. 1) controls the present case and that the selectmen are estopped (by the earlier decision) to deny a license for gasoline storage and sale on the ground that such storage and sale would constitute a traffic hazard. The present petitioner also says that the zoning decree was granted, not merely on the ground that the judge in the earlier case on the evidence then introduced would himself have granted a special permit, but because the evidence did "not warrant the conclusion . . . that . . . a service station would create an unnecessary traffic hazard." It is to be noted that in the earlier zoning case, the defendant was the board of appeals. In this case, the board of selectmen is the respondent.

We perceive nothing in G. L. c. 148, § 13, as amended, or in c. 40A, which indicates to us that a decision by the town's board of appeals, or by a court, in a zoning matter is binding on the local licensing authority in considering a licensing matter under § 13, even though similar issues of fact are presented and much the same considerations are relevant. We think that these separate statutory provisions, in separate chapters of the General Laws, are not so interrelated as to make a decision on a zoning permit binding with respect to a license application. With respect to the zoning matter, the board of appeals, and with respect to this licensing matter, the selectmen, were (as boards) each bound to conduct a public hearing. We think that each board (even if the members of the board of appeals were appointed by the selectmen; see G. L. c. 40A, § 14, as amended through

---

[3] The board of appeals granted the special permit on November 26, 1968, following the Superior Court decree but before our decision in the *Gulf Oil Corp.* case cited in the body of the opinion. In that case (at pp. 277–278) we said "To hold that a decision . . . denying a [special] permit is arbitrary and capricious per se whenever the board, on facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion."

St. 1961, c. 276, § 1) was intended by the governing statute to reach in good faith, after considering the evidence, an independent decision on the issues properly before it in a matter as to which it as a board had "independent responsibility." See *Rounds* v. *Water & Sewer Commrs. of Wilmington*, 347 Mass. 40, 43–44. The statutory standards to be applied by the two boards are not identical, and it is far from clear, on this record, that the board of appeals and the Superior Court judge in the zoning matter had before them the same evidence which was before the selectmen in their consideration of the license application. The matter before us is in various respects sufficiently separate from the earlier zoning controversy to make inappropriate the application of the zoning decision (upon principles of stare decisis, collateral estoppel, or law of the case) against the selectmen as a public body. See general discussion in Davis, Administrative Law, §§ 17.01–18.12, esp. §§ 18.04–18.05, 18.12; Rathkopf, Zoning and Planning, 69–1 to 69–19. Cf. *Rudolph* v. *City Manager of Cambridge*, 341 Mass. 31, 39–40 (discussing the effect of actual intervention in an earlier proceeding).

3. The order for judgment is reversed. The petition is to be dismissed.

*So ordered.*

The Chief Justice and Mr. Justice Reardon dissent.