BUILDING INSPECTOR OF LANCASTER *vs.*
GEORGE E. SANDERSON.

Worcester.    December 10, 1976. — March 14, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Rules of Civil Procedure.    Estoppel.    Zoning,* Nonconforming use or structure, Enforcement.    *Jurisdiction, Civil,* Enforcement of zoning. *Airport.    Words,* "Clearly erroneous," "Plainly wrong."

Discussion of the "clearly erroneous" standard of Rule 52 (a) of the Massachusetts Rules of Civil Procedure. [160-161]
In an action by a town's building inspector seeking to enjoin the defendant from using land in violation of the zoning by-law, there was no merit in the defendant's argument that the town was estopped from enforcing its zoning by-law. [161-164]
In an action by a town's building inspector seeking to enjoin the defendant from using land in violation of the zoning by-law, there was nothing to support the defendant's argument that his use of the land was exempt from the by-law as a nonconforming use [164-166]; nor did the fact that the defendant used the land in the operation of an airport render it exempt from the by-law by reason of its public function [166-167].

CIVIL ACTION commenced in the Superior Court on November 15, 1974.

The case was heard by *Meagher*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert B. Smith* for the defendant.

*Thomas F. McEvilly* for the plaintiff.

QUIRICO, J. This is an action by the building inspector of the town of Lancaster seeking to enjoin the defendant from using land in that town for airport runway purposes in alleged violation of the town's zoning by-law. The by-law designates the building inspector to be the enforcement officer thereof, and this action is brought by the inspector pursuant to G. L. c. 40A, § 22, as amended through St. 1970, c. 678, § 1.[1] After a hearing on the merits a judge of the Superior Court made a decision entitled "Findings of Fact, Rulings, and Order for Judgment" in favor of the plaintiff and judgment was entered in accordance therewith granting the injunctive relief requested. The defendant appealed to the Appeals Court and the case was transferred to this court on our motion. G. L. c. 211A, § 10 (A).

We summarize the facts found by the judge. Prior to 1969 the defendant owned and operated an airport located entirely within the town of Shirley. In 1969 he purchased from the Commonwealth a parcel of land in Lancaster abutting his Shirley airport property. At all times material to this case this land in Lancaster was classified as either residential or residential-recreational under the Lancaster zoning by-law, and neither airports nor airport runways were permitted in those zones. In 1970 the Lancaster zoning board of appeals (board) granted the defendant a variance authorizing him to extend his airport runway from

---

[1] All the proceedings before the Superior Court in this case occurred before the enactment of St. 1975, c. 808, § 3, entitled "An Act further regulating the zoning enabling act." Therefore, any reference in this opinion to a section of G. L. c. 40A shall be to the section as it appeared prior to the enactment of St. 1975, c. 808.

the Shirley town line southerly into Lancaster for a distance of 600 feet on the property which he had acquired from the Commonwealth. Sometime between 1970 and 1974 the defendant further extended the same runway southerly on the same parcel of land an additional distance of 1,400 feet without obtaining any variance or other permit therefor from the town of Lancaster. In 1974 he applied to the board for a further variance to cover the runway extension of 1,400 feet which he had already constructed. The petition was denied and he took no appeal from the denial. The defendant obtained the annual certificates of approval for his airport from the Massachusetts Aeronautics Commission (commission) as required by G. L. c. 90, § 39B. The certificate for 1974-1975 referred to a runway 3,660 feet in length, and the one for 1975-1976 referred to a runway 2,460 feet in length. The earlier certificates did not state the length of the runway.

The judge ruled that the approval by the commission "does not obviate the necessity of complying with the zoning ordinances, statutes and other lawful ordinances and regulations," and that the extension of the runway in Lancaster beyond the 600 feet authorized by the variance was unlawful. He ordered the entry of judgment enjoining the extension beyond 600 feet. The defendant contends that (a) the town is estopped from enforcing the zoning by-law against him, (b) the land is exempt from the zoning by-law, and (c) the zoning by-law does not apply to his use because he was discharging a public function.

For the reasons stated below, we hold that there was no error and we affirm the judgment.

The record appendix is limited to the judge's decision, the judgment and notice of appeal therefrom, certain exhibits, the transcript and the docket entries. The omission of the complaint and answer is not explained.[2] The findings

---

[2] Massachusetts Rules of Appellate Procedure 8 (a), as amended, 367 Mass. 919 (1975), provides in part: "The original papers and exhibits on file, the transcript of proceedings, if any, and a certified copy

of fact included in the judge's decision are based in large part on oral testimony. We therefore consider them in light of the provision of Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." The parties did not file a motion requesting the judge to amend his findings or to make additional findings (Mass. R. Civ. P. 52 [b], 365 Mass. 816 [1974]), nor do they now contend that any finding or conclusion made by the judge is unsupported by, or contrary to, the evidence (Mass. R. A. P. 8 [b], 365 Mass. 849 [1974]).

The language of rule 52 (a) to the effect that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses," is identical to the language of rule 52 (a) of the Federal Rules of Civil Procedure which has been in effect since 1938 and which had been the subject of interpretation and application in many decisions by Federal courts before we adopted our rule effective July 1, 1974. "This court having adopted comprehensive rules of civil procedure in substantially the same form as the earlier Federal Rules of Civil Procedure, the adjudged construction theretofore given to the Federal rules is to be given to our rules, absent compelling reasons to the contrary or significant differences in content." *Rollins Environmental Servs. Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975). We therefore examine several of the pertinent Federal court decisions.

One of the most frequently quoted definitions of the words "clearly erroneous" is the following which was stated in *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In *Zenith*

of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases."

*Radio Corp.* v. *Hazeltine Research, Inc.,* 395 U.S. 100, 123 (1969), there is this further statement: "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.* The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52 (a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' " *Guzman* v. *Pichirilo,* 369 U.S. 698, 702-703 (1962). *Commissioner* v. *Duberstein,* 363 U.S. 278, 290-291 (1960). *United States* v. *National Ass'n of Real Estate Bds.,* 339 U.S. 485, 495-496 (1950).

As thus defined, the words "clearly erroneous," which appeared first in Federal rule 52 (a) and which were adopted as part of our rule 52 (a) in 1974, require the same standard for appellate review formerly applied by this court in its numerous decisions when deciding whether findings by a trial judge were "plainly wrong." This is illustrated by the following language in our opinion in *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 564 (1961): "[O]ur duty is to examine the evidence and decide the case according to our own judgment, accepting the findings of the trial judge, whether based wholly or partly upon oral testimony, as true, unless they are shown to be plainly wrong, and finding for ourselves such other and additional facts as we deem to be justified by the evidence." *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976).

We conclude that the findings made by the judge are not clearly erroneous within the meaning of Mass. R. Civ. P. 52 (a), and we pass to the consideration of the several grounds argued by the defendant in support of his appeal.

1. *Estoppel.* The defendant's first argument is that certain actions and conduct by officials of the town of Lan-

caster operate as an estoppel against the plaintiff building inspector's attempts to enforce the zoning by-law in any manner which would prohibit the airport runway extension which is involved in this case. We reject this argument for the several reasons discussed below.

(a) Estoppel is a defense which, under Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974), must be affirmatively pleaded. The record on appeal in this case does not include the complaint or defendant's answer, and it does not otherwise state or indicate that the defense of estoppel was affirmatively pleaded.

(b) If it were determined that the defendant affirmatively pleaded estoppel, he would probably gain nothing thereby because of our frequent and consistent holdings that a municipality cannot ordinarily be estopped by the acts of its officers from enforcing its zoning by-law or ordinance. In *Cullen* v. *Building Inspector of N. Attleborough*, 353 Mass. 671, 675 (1968), we said: "The right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of its officers." In *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162-163 (1962), we said: "The trial judge seems to have rested his decision to some extent on estoppel by reason of the fact that the plaintiffs had been granted a building permit by the 'appropriate ... [city] official.' This court has held that the doctrine of estoppel cannot stay the hand of a municipality in enforcing its zoning laws.... And this is the prevailing view elsewhere. See Rathkopf, The Law of Zoning and Planning, c. 67, and cases collected in 119 A.L.R. 1509 et seq. [1939]. The reasons for the inapplicability of estoppel in cases of this sort have been well stated by the Supreme Court of New Jersey in *Zahodiakin Engr. Co.* v. *Zoning Bd. of Adjustment*, 8 N.J. 386 [1952], where it was said at page 396, 'The want of fundamental power cannot be indirectly supplied by the application of the doctrine of estoppel in pais. The elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that

cannot thus be set at naught....' " In *Building Comm'r of Medford* v. *C. & H. Co.*, 319 Mass. 273, 283 (1946), we said, "The bill is brought to enforce the zoning ordinance for the public welfare ... and the building inspector who is charged with the enforcement of this ordinance is not estopped by the alleged action of the city or its officials, nor is the city itself." *Dresser* v. *Inspector of Bldgs. of Southbridge*, 348 Mass. 729, 731 (1965). *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.* 344 Mass. 281, 286 (1962). *Manchester* v. *Phillips*, 343 Mass. 591, 597 (1962). *Seekonk* v. *Anthony*, 339 Mass. 49, 55 (1959). *Lincoln* v. *Giles*, 317 Mass. 185, 187 (1944).

Even in an extreme situation such as that in *Marblehead* v. *Deery,* 356 Mass. 532, 538 (1969), where we referred to "the unusual combination of circumstances [which] leads us to deny mandatory injunctive relief ... on recognized equitable principles," we nevertheless noted that "the town is not now estopped to assert the zoning violation by reason of the 1960 conduct of its selectmen and officers ...." *Id.* at 537. See *Chilson* v. *Board of Appeal of Attleboro*, 344 Mass. 406, 409-410 (1962).

(c) The defendant's argument that the plaintiff is estopped from enforcing the zoning by-law in this case is not based on any facts found by the judge because the judge made no findings on that subject. Rather it is based on evidence consisting mostly of oral testimony, some of which was contradicted, on the basis of which the defendant contends that the judge could have found facts constituting estoppel. We have already noted above that under rule 52 (b) the defendant could have requested the judge to make additional findings, but he made no such request. In these circumstances we do not believe that we should assume the role of the trial judge and find facts which the defendant could have asked, but did not ask, the judge to find, even if some version of the evidence would permit such findings. Assuming that we have the power to make additional findings in an appropriate case, this is not such a case. Absent unusual circumstances an appellant claiming error based on the assumption of facts

not found by the trial judge should exhaust his opportunity under rule 52 (b) to request the judge to find such facts.

(d) The facts on which the defendant asks us to hold that, as matter of law, the plaintiff is estopped from enforcing the zoning by-law, as we glean them from his brief, are substantially the following. The defendant acquired the land in Lancaster by purchase from the Commonwealth for the purpose of augmenting both the safety of flight operations with respect to approaches and landings and the public safety at his airport. Before the defendant purchased the land, the chairman of Lancaster's board of selectmen sent a letter to a member of the Legislature purporting to record the board as favoring the purchase of the land for the extension of the air landing strip and stating that it would "give the pilots excellent approach and landing features as well as help solve most of the problems that exist with the Shirley residents who live adjacent to the field." The defendant was thus induced to exchange some land owned by him for the land conveyed to him by the Commonwealth and used by him for the express purpose stated in that letter. The board granted him one variance permitting him to extend his runway a distance of 600 feet into Lancaster and he has incurred a great expense in constructing the further extension of the runway which is at issue in this case. If the zoning by-law is enforced against him he will be exposed to great damage "without fault in consequence of having trusted the representations designedly made by the Board of Selectmen . . . ."

If we assume those facts, as distinguished from the conclusory arguments, they do not require a holding that the town is estopped from enforcing the zoning by-law against the defendant.

2. *Claim of exemption from zoning by-law as nonconforming use.* The defendant contends that his construction and use of the extended airport runway without obtaining any permit or variance therefor is lawful as a nonconforming use protected by the following provision of G. L. c. 40A, § 5, as amended through St. 1969, c. 572:

"[A] zoning ordinance or by-law ... shall not apply ... to the existing use ... of land to the extent to which it is used at the time of adoption of the ordinance or by-law, but it shall apply to any change of use thereof...." The town zoning by-law which was adopted on March 2, 1970, and took effect on September 11, 1970, provided as follows: "8.21 Continuance, — Any lawful use in existence at the time of adoption of this Bylaw may continue unchanged." The defendant acquired the land in question by a deed from the Commonwealth dated October 12, 1971. We discuss below the basis for the defendant's contention that his disputed use is exempt from the application of the zoning by-law.

(a) The defendant first argues that while the land was owned by the Commonwealth it was exempt from the town's zoning by-law at least to the extent that the by-law might interfere with or prevent the use of the land by the Commonwealth in the accomplishment of its legitimate functions. *Medford* v. *Marinucci Bros. & Co.*, 344 Mass. 50, 54-56 (1962). We assume that premise to be correct for the purposes of this case.

(b) The defendant then argues that while the Commonwealth still owned the land it permitted him to enter thereon to make surveys and appraisals, that he applied to the commission for a certificate to use the land as a landing strip for his airports, that these acts by him "were part of the State's use," and that he "was an agent of the Massachusetts Aeronautics Commission" in what he did before becoming the owner of the land.

This argument suffers from the same fatal deficiency which we noted above with reference to the argument on estoppel. It is unsupported by any facts found by the judge, and the defendant did not avail himself of the provision of rule 52 (b) which permitted him to request that the judge make additional findings of fact.

Furthermore, if we assume that while the Commonwealth still owned the land he took the steps described by him in anticipation of using the land for the extension of his airstrip, there is nothing in the record which warrants or

permits us to accept his contention that he did so as an agent of the Commonwealth or of the commission or that the steps amounted to the use of the land for airport purposes.

The defendant makes no claim or argument in his brief that because the land was exempt from the zoning by-law while it was owned by the Commonwealth it continued to be exempt after it was acquired by him.

3. *Claim of exemption by reason of public function.* The defendant's final contention is closely related to the one which we have just considered and rejected above. He contends that his operation of the airport is, in effect, a public function, and that it should therefore be exempt from the zoning by-law as it would be if it were operated by the Commonwealth.[3] He argues that the towns of Shirley and Lancaster could have joined in the establishment of an airport commission to operate an airport under G. L. c. 90, § 51N, that their failure to do so impedes "the functions of the Commonwealth concerned with both rendering public air transportation ... and of fostering air commerce," that because of their failure to do so he is discharging that public function "as the agent of the Massachusetts Aeronautics Commission," and that therefore the zoning by-law should not apply to his operation.

We do not agree with the defendant's contentions. His status is that of an entrepreneur engaged in the operation of a privately owned commercial landing field or airport. The fact that he is required to obtain and hold permits, certificates or approvals from municipal, State or other public officials, authorities, boards or commissions for the operation of his enterprise does not change its status from that of a private enterprise to a governmental function entitled to exemption from zoning by-laws and ordinances.

---

[3] The defendant does not claim that there is any provision of G. L. c. 40A, The Zoning Enabling Act, or of the town's zoning by-law, expressly exempting his airport from the by-law. Neither does he claim that the airport use was "used by a public service corporation [which] may be exempted from the operation of a zoning ordinance or by-law ... [by] the department of public utilities ...." under the provisions of G. L. c. 40A, § 10, inserted by St. 1954, c. 368, § 2.

The holding of a license or permit required by law as a condition precedent to the operation of a particular business does not entitle the licensee or permittee to operate that business in a place where such a business is prohibited by zoning by-laws or ordinances. *Pratt* v. *Building Inspector of Gloucester,* 330 Mass. 344, 345 (1953). It is equally true that the mere fact that a use of premises for a particular purpose is permitted by the zoning by-law or ordinance does not relieve the owner or occupant of the requirement that he procure whatever other licenses or permits are required by law for the conduct of such a business. *Davidson* v. *Selectmen of Duxbury,* 358 Mass. 64, 66-68 (1970).

4. We conclude that in so far as the zoning by-law is concerned the defendant's extension of his airport runway in Lancaster beyond the distance of 600 feet permitted by the variance granted him in 1970 was unlawful, and that the judgment of the Superior Court thereon was correct.

*Judgment affirmed.*