### Jerry Terino v. Town of Hartford Zoning Board of Adjustment

[538 A.2d 160]

No. 85-516

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed November 25, 1987

*Alfred A. Guarino, Jr.*, White River Junction, for Plaintiff-Appellee.

*Welch, Graham & Manby, Geoffrey A. Commons*, Law Clerk (On the Brief), White River Junction, for Defendant-Appellee Town of Hartford.

*Otterman and Allen, P.C.*, Barre, for Defendant-Appellant Propane Distribution Center, Inc.

**Peck, J.** In this case of first impression, we must determine the proper role of performance standards in local zoning ordinances. Propane Distribution Center, Inc. (P.D.C.), the defendant below, appeals from a de novo superior court judgment denying its application for an industrial zoning permit in the town of Hartford. We affirm.

Defendant raises two issues for our consideration.[1] First, it contends that performance standards may only establish acceptable levels of operation for a permitted use and may not ban the use

---

[1] This case was argued twice. At the initial argument defendant also maintained that 21 V.S.A. §§ 261-264 preempted any municipal regulation of dangerous substances. However, at reargument defendant waived this contention.

altogether. Second, defendant claims that off-site factors should not be considered as a basis for denying a zoning permit.

Defendant P.D.C. holds title to a tract of land on North Elm Street in White River Junction. This tract is located within an established industrial zone, and defendant operates a 30,000 gallon propane storage tank on the site. The operation of a propane storage tank is a permitted use within the Hartford industrial zone.

The industrial zoning designation notwithstanding, the North Elm Street area has a residential character, and many families with children live in the area. North Elm Street is a narrow dead-end street accessible only by Nutt Lane, which runs perpendicular to North Elm.

The tractor-trailers which deliver propane to the P.D.C. tank cannot negotiate the turn from Nutt Lane to North Elm Street without making a series of complex maneuvers. In addition, the Boston & Maine Railroad tracks intersect Nutt Lane, and traffic is often delayed for up to 15 minutes by slow moving or stopped trains.

After P.D.C. obtained a permit from the Hartford zoning administrator for the 30,000 gallon propane storage tank, plaintiff, an interested person under 24 V.S.A. § 4464, appealed to the town zoning board of adjustment. The board unanimously affirmed issuance of the permit, and the plaintiff appealed to the Windsor Superior Court.

■ Pursuant to 24 V.S.A. § 4472(a), the superior court exercised de novo review of the zoning board's proceedings. "A de novo hearing is one where the case is heard as though no action whatever had been held prior thereto. All of the evidence is heard anew, and the probative effect determined by the appellate tribunal . . . as though no decision had been previously rendered." *In re Poole*, 136 Vt. 242, 245, 388 A.2d 422, 424 (1978) (citations omitted).

The superior court made twenty-four findings on review, among which are findings relating to the tractor-trailer access problems, the residential character of the neighborhood, and the difficulties presented by the grade crossings. The court found that, when viewed on its own, the P.D.C. site satisfied performance standard

8 relating to safety hazards,[2] but based upon its findings concluded that the P.D.C. use violated this performance standard. Specifically, the court concluded that:

> (J) Although this propane tank installation is fully compliant with all pertinent safety codes, that does not guarantee that no fire or explosion will occur. All the precautions in the world cannot ensure freedom from vandalism, or ordinary human carelessness. Should fire or explosion ever occur, regardless of who is at fault, it would occur in a residential neighborhood, on a dead-end street, with insufficient water supply, and with problematic access or egress. Because of its location, the P.D.C. use constitutes a fire and explosion hazard.

The court also addressed the site access problem, concluding that "[a]s an industrial use requiring regular deliveries by tractor-trailer truck [P.D.C.'s] location on a dead-end street which can only be reached via a complex turn creates a safety hazard, and thereby fails to satisfy performance standard 8 . . . ." Based on these conclusions the superior court denied P.D.C.'s zoning permit.

Defendant argues first that performance standards may not ban a permitted use altogether but may only establish acceptable levels of operation for a permitted use. We disagree.

■ "The most elemental rule of statutory construction is that the plain meaning of the statute controls." *Heisse* v. *State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983) (citations omitted). 24 V.S.A. § 4407(7) enables municipalities to "specify acceptable standards or levels of performance which *will be required* in connection with any use." (emphasis added). We find that the plain meaning of this statute authorizes municipalities to make performance standards indispensable conditions which must be met prior to the issuance of a permit. Where an otherwise permitted use fails

---

[2] Section 4-3-22 of the Hartford Zoning Ordinance promulgates performance standards for industrial uses. It requires in relevant part:

In accordance with Section 4407(7) of the Act [24 V.S.A. § 4407(7)], in all districts the following performance standards together with all applicable state standards must be met. The Board of Adjustment shall decide whether proposed uses meet the standards. No use shall:

. . . .

(8) Cause a fire, explosion or safety hazard.

to meet the performance standards, a reviewing tribunal may properly rescind the permit. See *DeCoals, Inc.* v. *Board of Zoning Appeals,* 168 W. Va. 339, 340, 284 S.E.2d 856, 857 (1981) (coal tipple permit rescinded for failure to meet performance standards pertaining to the production of dust and noise).

■ Defendant next maintains that off-site factors are not proper bases for denial of a zoning permit. We disagree. Whenever performance standards must be met for a permitted use, the zoning board or court in a de novo proceeding must determine whether the particular use in the proposed location is compatible with the surrounding area. See *LaSalle National Bank* v. *County of Lake,* 27 Ill. App. 3d 10, 15, 325 N.E.2d 105, 111 (1975). While denial of a zoning permit for a facility which complies with all of the established standards may be an indication that such denial is unreasonable, "compliance with all of the standards required for a [zoning] permit does not necessarily mean that the denial of the permit is arbitrary and unreasonable." *Id.* "[A]ny standards which a legislative body has passed beforehand can only serve as guidelines. To hold that prior standards are absolute requirements which must rigidly be adhered to would rob the [zoning permit] technique of its much needed flexibility." *Id.* See *Davidson* v. *Board of Selectmen,* 358 Mass. 64, 66, 260 N.E.2d 695, 697 (1970) (The board has discretion to deny a license for the storage and sale of gasoline, and may consider off-location consequences such as traffic hazards.).

Upon careful review of section 4-3-22 of the Hartford Zoning Regulations, we find no express language which limits reviewing tribunals to the consideration of on-site safety factors. In addition, the enabling legislation, 24 V.S.A. § 4407(7), permits municipalities to enact performance standards for the prevention of hazards originating both from the site and from the relationship of the particular neighborhood to the proposed use. Thus, we hold that under the facts and circumstances presented in this case the superior court did not err in basing its decision on relevant off-site factors.

*Affirmed.*